**In re UNITED CIGAR STORES CO. OF AMERICA.**

**No. 55129.**

District Court, S. D. New York.

May 28, 1934.

Ernst, Gale, Bernays & Falk, of New York City (George G. Ernst and Henry Gale, both of New York City, of counsel), for claimant petitioners.

Arthur Leonard Ross and Otto B. Schmidt, both of New York City, for Fidelity & Casualty Co. of New York.

PATTERSON, District Judge.

The question is whether attorneys filing a proof of claim in behalf of a creditor against a bankrupt estate have an attorney's lien on dividends declared on a portion of the claim, as against a surety which has paid such portion of the claim to the creditor and become the owner of it by subrogation.

The facts are not in dispute. Some years prior to bankruptcy the bankrupt leased certain real estate in Chicago owned by the Grey estate, agreeing to pay taxes as well as rent. The tax for 1928 was in controversy and part was not paid. To preserve its rights under the lease, the bankrupt in 1930 furnished to the Grey estate a surety bond covering the tax in dispute, the bankrupt being principal and Fidelity & Casualty Company surety on the bond. Bankruptcy occurred while the tax liability was still unsettled. The Grey estate, conceiving that it had claims against the bankrupt for various items, retained Ernst, Gale, Bernays & Falk, attorneys in New York, to enforce its rights against the bankrupt estate, under an arrangement whereby

the attorneys were to receive 15 per cent. of the amount collected. The attorneys in February, 1933, filed proof of claim for some $58,000, of which $12,600 represented the claim for the 1928 tax and penalty. Mention of the bond was made in the proof of claim. By September, 1933, the tax matter was terminated unfavorably to the Grey estate, and the surety company thereupon paid to the Grey estate, pursuant to the terms of the bond, the sum of $11,136.92.

The trustee in bankruptcy having filed objections to the claim, a compromise was arrived at. The claim was to be allowed at $17,655.53, the item for the 1928 taxes representing $10,171.50 of the total figure. An order fixing the claim accordingly was entered on December 8, 1933. A few days later, on December 12, 1933, an order was presented by the surety company, and consented to by the attorneys for the Grey estate, whereby the surety company was subrogated to the claim of the Grey estate to the extent of the $10,171.50 allowed on the 1928 tax. This order was signed by the referee and was without prejudice to the contention of the attorneys that they had a lien on this part of the claim.

It further appears that the surety company had already had direct dealings with the trustee. The latter had claims against the surety company, and the surety company asserted counterclaims. One of the counterclaims was a right of indemnity in case of loss on the bond involved in this case. In an agreement settling these controversies, it was agreed that, if the surety company should pay the obligee under the bond, it should have reimbursement to the extent of any dividend otherwise payable to the obligee in respect to the bankrupt's obligation covered by the bond.

Coincident with the order of subrogation referred to, Ernst, Gale, Bernays & Falk made application for an attorney's lien on all dividends declared on the $10,171.50 portion of the claim to which the surety company had been subrogated. The surety company opposed, denying the existence of any lien. The referee dismissed the application. I am of opinion that the attorneys have a lien on the dividends from this part of the claim and are entitled to the relief asked for.

An attorney who files a proof of claim for a creditor in a bankruptcy proceeding pending in this district and procures the allowance of the claim has an attorney's lien on the dividends declared and paid on such claim. Bankruptcy proceedings are a species of suits in equity, and in most cases it would

seem that the general rule in equity which recognizes a lien in cases where attorneys recover a fund for their clients could be availed of by attorneys filing and prosecuting proofs of claim in bankruptcy. In re Rude, 101 F. 805 (D. C. Ky.). See, also, Trustees of Internal Improv. Fund v. Greenough, 105 U. S. 527, 535, 26 L. Ed. 1157; Central Railroad v. Pettus, 113 U. S. 116, 5 S. Ct. 387, 28 L. Ed. 915; Matter of Heinsheimer, 214 N. Y. 361, 108 N. E. 636, Ann. Cas. 1916E, 384. However this may be, it has been settled since In re Baxter & Co. (C. C. A. 2) 154 F. 22, that attorneys who file and prosecute in behalf of creditors a proof of claim in bankruptcy proceedings in a District Court sitting in the state of New York have a lien by virtue of section 475 of the New York Judiciary Law (Consol. Laws N. Y. c. 30). That section provides: "From the commencement of an action or special proceeding, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come; and the lien can not be affected by any settlement between the parties before or after judgment or final order. The court upon the petition of the client or attorney may determine and enforce the lien."

The Circuit Court of Appeals held in the Baxter Case that the statute is more than a procedural rule; it confers on attorneys a substantive right recognized and enforced in the federal courts. The same court has recently extended this ruling to claims sued upon in the United States Customs Court sitting in this state. Brooks v. Mandel-Witte Co., 54 F.(2d) 992 (C. C. A. 2).

There are no facts in the present case that take it out of the general rule. The creditor retained the attorneys to enforce the claim against the bankrupt estate, on an understanding that the attorneys should have 15 per cent. of whatever could be collected. The attorneys filed proof of claim and pushed it to conclusion. The claim included the 1928 tax item. The creditor then owned that part of the claim against the bankrupt, both on the lease and on the bond. The fact that the creditor also had a right against the surety company to the extent covered by the bond does not alter the situation. The bankrupt was the principal debtor, and the creditor had the right, if not the duty, to file proof of claim against the bankrupt. The attor-

neys therefore acquired a lien at the outset on the entire claim.

No part of the lien was ever lost. When the surety company later paid the creditor pursuant to the bond, it became subrogated to that portion of the creditor's claim that related to the 1928 tax. The subrogation was formally recognized by the order of December 8, 1933. But subrogation is no more than a substitution or assignment by operation of law. The surety took the creditor's claim cum onere, incumbered and diminished by the attorney's lien that had already attached to it. The attorneys were within their rights, therefore, in insisting that the dividends payable to the surety company as subrogee were subject to their lien, and their petition should have been allowed. Central Trust Co. of New York v. Richmond, etc., R. Co., 105 F. 803 (C. C. A. 6); Boyle v. Boyle, 106 N. Y. 654, 12 N. E. 709.

It is no answer to say that for their entire compensation the attorneys should look to the dividends on the other portion of the claim. In the first place, their lien adheres to the whole claim, and they may satisfy it ratably out of all dividends paid. Whether the dividend diminished by the lien goes to the creditor or to the surety company is no concern of theirs. In the second place, there is no reason why the burden of the attorney's lien should be cast entirely on the creditor. The attorney's services were advantageous in establishing the portion as to the 1928 tax as well as the remaining portion of the claim.

▮ It is a mistake to say that an attorney's lien is merely to protect the attorney against settlements made by a defendant directly with a plaintiff. It also serves as a protection to the attorney against subsequent assignees of the client and against persons taking by subrogation as in the present case. Frink v. McComb, 60 F. 486 (C. C. Del.); Matter of Heinsheimer, supra.

There is no merit in the point that the surety company might have secured payment from the bankrupt estate directly under the contract made by it with the trustee. Whether that contract provided for anything more than subrogation may be doubted. In any event, no effort to pay the surety company directly was made. The method of payment actually followed was by subrogation to the creditor's claim, and on that claim the attorneys already had a lien.

The order of the referee will be reversed. There will be an order adjudging that Ernst, Gale, Bernays & Falk are entitled to a lien on the dividends paid on the portion of the claim to which the surety company was subrogated.