**In the Matter of GRAYSON–ROBINSON STORES, INC., Debtor.**

United States District Court
S. D. New York.
March 20, 1964.

See also D.C., 215 F.Supp. 921.

**610**

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Lloyd K. Garrison, New York City, of counsel, for debtor.

Marcus & Levy, New York City, Harry C. Chashin, New York City, of counsel, for petitioners.

DAWSON, District Judge.

This is a petition to review an order dated January 24, 1964, by the Referee in Bankruptcy, which permitted the rejection of an executory contract of the debtor Grayson-Robinson Stores, Inc., after confirmation of an arrangement in proceedings under Chapter XI of the Bankruptcy Act.

The facts are not in dispute. On July 5, 1961, the debtor, Grayson-Robinson Stores, Inc., entered into an agreement with the Shoe Corporation of America. Shoe Corporation was to transfer 213,-053 shares of the common stock of the A. S. Beck Shoe Corporation to Grayson in exchange for $4,900,219 in face amount of 5% convertible subordinated debentures due December 31, 1985, to be

issued by Grayson. The 213,053 shares of Beck constituted 51% of the then outstanding stock. The agreement also contained a promise by Grayson to make a like offer to the minority shareholders of Beck:

"3) As soon as practical after the execution of this agreement by both parties and necessary registration under Federal securities laws Grayson-Robinson shall offer to acquire from the minority shareholders of Beck all or any part of the outstanding common shares of Beck held by them in exchange for Grayson-Robinson's 5% convertible debentures due December 31, 1985, at the same rate and under the same terms, including the same right of conversion, as are available to Shoe Corporation of America, and subject to the same right of redemption as Grayson-Robinson may exercise with respect to the debentures it proposes to issue to Shoe Corporation of America. Grayson-Robinson shall give the Beck minority shareholders sixty (60) days in which to accept.

"4) Grayson-Robinson will, at its own expense, take any action required in order that the issuance of the debentures will comply with all applicable Federal securities laws and the laws of any State compliance with which may be necessary for the legal issuance of such securities, and that the issuance of the shares of stock which may be issued on conversion of the debentures shall have been properly authorized and will be listed on any stock exchange on which Grayson-Robinson's stock is listed at the time. Grayson-Robinson shall at its own expense, within sixty (60) days after Shoe Corporation of America requests it, take all steps reasonably necessary to file a registration statement under the Securities Act of 1933 and the Securities and Exchange Commission Act of 1934. Shoe Corporation of America may make such request at any time."

Pursuant to the agreement, Grayson prepared and qualified with the Securities and Exchange Commission a Trust Indenture, dated December 4, 1961; debentures were issued to the Shoe Corporation; and the debentures were exchanged for the stock. On January 26, 1962, Grayson filed with the SEC a registration statement under the Securities Act of 1933 to cover the debentures to be offered to the minority shareholders of Beck.

On June 20, 1962, Rose B. Chashin, individually and on behalf of all minority stockholders of Beck similarly situated, commenced an action against Grayson for specific performance of the July 5, 1961 agreement and for damages and interest.

On August 14, 1962, Grayson filed its petition under Chapter XI of the Bankruptcy Act. The registration statement was withdrawn and the proceedings in the Chashin action were stayed. The contract between Grayson and Shoe Corporation was inadvertently omitted from the statement of executory contracts required by section 324(1) of the Bankruptcy Act to be filed with the petition.

It was not until September 26, 1963, that debtor obtained an order requiring Shoe Corporation and all stockholders of record of Beck to show cause why the executory portions of the July 5, 1961 agreement should not be rejected. This order to show cause was returnable on October 9, 1963, but was not filed until October 8. The hearing was held on October 16 and decision was rendered January 6, 1964. On January 24, 1964, Referee Herzog signed the order permitting rejection of the executory portions of the contract.

On October 3, 1963 the debtor's Arrangement had been confirmed.

The petition to review has been filed by the following owners of Beck stock as third party beneficiaries under the contract: Rose B. Chashin, Lenore Livingston, Albert E. Levy, Ida E. Politinsky, A. Bruce Chashin, Hila Louise Chashin, Max Lashinsky, Harry Chashin, Martin Spitzer and Herbert R. Gelbspan.

There are two basic issues for review: (1) whether the court had jurisdiction to authorize rejection of the contract after confirmation of the arrangement; and (2) whether the debtor was barred from moving to reject the executory provisions of the contract because it had previously obtained and utilized court approval to adopt and confirm other provisions thereof.

It is the decision of this Court that in the circumstances of this case, the referee had no jurisdiction to authorize the rejection of the contract in question after confirmation of the Arrangement. Therefore only discussion of the first issue is necessary.

■ Rejection of an executory contract in a Chapter XI proceeding can be accomplished in two ways: (1) pursuant to permission of the court (section 313(1)); (2) pursuant to provisions included in the Arrangement (section 357). There were no such provisions in the Arrangement. Referee Herzog depended upon section 313(1) for his authority:

"Upon the filing of a petition, the court may * * *

"(1) permit the rejection of executory contracts of the debtor, upon notice to the parties to such contracts and to such other parties in interest as the court may designate * * *."

Section 313(1) contains no specific time limitation on this authority.

Section 367 of the Bankruptcy Act provides that "Upon confirmation of an arrangement * * * except as otherwise provided in sections 369 and 370 of this Act, the case shall be dismissed." Both sections 369 and 370 are inapplicable to the case at bar. Section 369 provides for retention of jurisdiction "until the final allowance or disallowance of all debts, affected by the arrangement and not barred by the provisions of section 352 of this Act, which * * * arise from the rejection of executory contracts by the debtor and are proved within such time as the court may direct." Section 370 provides for distribution to section 369 creditors when their debts are allowed.

■ Section 369 is inapplicable since the debt which might have arisen from the rejection of this executory contract would not have been one "affected by the arrangement." "Affected by" means "provided for by." (See Seedman v. Friedman, 132 F.2d 290, 294 (2d Cir. 1942)). The Arrangement divided the debts of the debtor into the following classes:

"Class 1: All debts which have priority under Section 64a(4) of the Bankruptcy Act, and administrative expenses.

"Class 2: The 5% Subordinated Convertible Debentures due December 31, 1985 (now held entirely by the Shoe Corporation of America).

"Class 3: All other unsecured debts (trade, expense, landlord and miscellaneous), including claims arising from the rejection, prior to confirmation, of executory leases and contracts."

■ The referee held that the present petitioners fell within Class 3 since upon rejection they became creditors and holders of unsecured debts. However the class specifically relates to claims arising from rejection *prior to confirmation*. Inclusion of the words "prior to confirmation" can have no other meaning than that claims which might arise from rejection after confirmation are not included within Class 3. If the debtor had thought through the implications of its application for authority to reject the executory contract, it probably would have also sought to alter the terms of Class 3. But the debtor did not do so, and is bound by its actions. This Court cannot now alter the class established by the Arrangement.

Since section 369 is inapplicable, section 370 becomes inapplicable by its own terms.

■ The fact that section 367(4) provides that upon confirmation of an Arrangement "the case shall be dismissed" with exceptions not here relevant does

not end the matter, for the Act distinguishes between the "case" and the "estate." The "estate" is not closed until a decree has been entered under section 372. Upon confirmation of an Arrangement much of the court's jurisdiction is ended, but not all. To determine what jurisdiction is retained one must look elsewhere in the Act.[1]

Referee Herzog did not rely upon any specific section of the Bankruptcy Act to extend his section 313(1) power beyond confirmation, but based his decision on a power inherent in a bankruptcy court to reserve jurisdiction over pending matters. Referee Herzog had reserved jurisdiction in the order of confirmation of October 3, 1963, which provided, in part:

> "ORDERED that this Court shall retain jurisdiction of this proceeding and of all pending matters therein including without limiting the foregoing. * * *"

■ There is no corresponding reservation of jurisdiction in the Arrangement itself. Section 368 provides that the court "shall retain jurisdiction, if so provided in the arrangement." Section 357(7) permits an Arrangement to include "provisions for retention of jurisdiction by the court until provisions of the arrangement, after its confirmation, have been performed." Article III, 6, of the Arrangement provided:

> "Pursuant to the provisions of Section 368 of the Bankruptcy Act, this Court shall retain jurisdiction of this proceeding until such time as all of the payments provided for herein to Class 2 or Class 3 creditors have been made."

This reservation in the Arrangement is effective only insofar as is necessary to carry out the provisions of the Arrangement. See Seedman v. Friedman, supra; 9 Collier on Bankruptcy, ¶ 8.12; ¶ 9.29 [2] (14th ed. 1963).

■ Rejection of an executory contract under the Bankruptcy Act constitutes a breach of the contract as of the date of the filing of the petition. Section 63, sub. c. Any person injured by the rejection is deemed a creditor for the purposes of Chapter XI and of the acceptance and confirmation of the Arrangement. Section 353. It is only fair that such a person should be apprised of his rights in time to participate in the acceptance procedure. Although a creditor cannot vote on the plan until his claim has been proved and allowed (section 362(1)), he can participate in the discussions relevant to the plan. See Mohonk Realty Corporation v. Wise Shoe Stores, 111 F.2d 287 (2d Cir. 1940); In re Greenpoint Metallic Bed Co., 113 F.2d 881 (2d Cir. 1940). Moreover, before voting on the Arrangement, all other creditors should be apprised of the existence of the rights under the executory contracts, and whether or not the contracts will be rejected and the class of unsecured creditors thereby increased.

> " * * * [I]f an executory contract is to be rejected on behalf of the debtor so as to give the other contracting party the status of an unsecured creditor, the right of rejection must be exercised in the * * * [arrangement] or upon the direction of the judge, before the * * * [arrangement] is confirmed. This must be so not only because an injured * * * [person] must be given an opportunity to share as a creditor in the formation of the plan and the distribution of securities, but also because the kind and amount of securities to be allotted to the several classes of creditors must be disclosed in any plan that is submitted to the creditors * * * for their acceptance." Consolidated Gas Electric Light & Power Co. of Baltimore v. United Railways & Electric Co. of Baltimore, 85 F.2d 799 (4th Cir. 1936).

The Consolidated case arose under section 77B of the Bankruptcy Act of 1898.

---

1. For a general discussion of what jurisdiction remains see 9 Collier on Bankruptcy ¶ 9.28 (14th ed. 1963).

In the order confirming a plan of reorganization the district court reserved jurisdiction over the rejection of executory contracts. The Fourth Circuit held such reservation to be improper.[2]

The Consolidated case is the only case which has been cited by either party which considers directly the question of reservation of jurisdiction over the rejection of executory contracts.[3]

█ The reasoning of the Consolidated case is peculiarly appropriate to the case at bar. The holder of an executory contract which has been neither confirmed nor rejected occupies an equivocal position. He is not a creditor with a provable claim; but he is not helpless, for he may insist that his contract be either confirmed or rejected and may apply to the court to protect his interest. In re Greenpoint Metallic Bed Co., 113 F.2d 881 (2d Cir. 1940). Moreover, all the creditors should be aware of his existence because of the requirement that the debtor list all executory contracts in the original petition. Section 324(1). However, in the case at bar, the debtor failed to list the contract in question. The creditors who voted on the plan were presumably unaware of petitioners' rights.[4] Moreover, the minority stockholders of Beck themselves were given no notice of the Chapter XI proceeding until the October 1, 1963, mailing of the notice of the hearing on the order to show cause why the contract should not be rejected. Section 334 provides that:

"Within ten days after the petition is filed the court shall give notice by mail to the debtor, the creditors and other parties in interest of a meeting of creditors to be held not less than fifteen days nor more than thirty days after the date of the mailing of such notice."

Clearly the notice given was not sufficient to protect the rights of the petitioners.

To recapitulate:

█ The beneficiaries of the executory contract were not listed as parties in interest in the schedules filed by the debtor. They, therefore, were given no notice of the pendency of the Chapter XI proceeding or an opportunity to participate in the formulation of the Arrangement or to vote on the Arrangement. The Arrangement itself contained no provision for the rejection of the executory provisions of the contract and made no provision for petitioners' participation in the Arrangement, for it limited participation therein to claims arising from the rejection "prior to confirmation" of executory contracts. They were, therefore, not parties whose interests were affected by the Arrangement. For the referee to change their status after the Arrangement had been confirmed by providing for the rejection of the contract and classifying them as general creditors meant that they had had no opportunity to participate in or vote upon the Arrangement to which they were to become parties. This the referee had no

2. The provisions of section 77B dealing with rejection are essentially the same as the provisions now in Chapter XI. Section 77B(c) provided: "Upon approving the petition or answer or at any time thereafter, the judge * * * (5) may direct the rejection of contracts of the debtor executory in whole or in part." 48 Stat. 915–916 (1934). The predecessors of Chapter XI, sections 12 and 74 of the old Act, contained no provisions governing the rejection of executory contracts.

3. The holding of the Consolidated case has been impliedly approved by Professor Moore, 9 Collier on Bankruptcy, ¶ 8.07 (14th ed. 1963): "An executory contract may be rejected not only pursuant to the provisions of an arrangement, but under § 313(1) the court may permit the rejection of such *prior to confirmation of the arrangement.*" (Emphasis supplied.)

4. Schedule B of the order of confirmation listed all "creditors whose claims arise from the rejection of leases, guarantees or other executory contracts by the Debtor." On the list were "All Stockholders of the A. S. Beck Shoe Company of record as of August 14, 1962." However, the order of confirmation was issued after the Arrangement was voted upon, and the Arrangement itself did not mention this contract.

power to do under the circumstances of this case.

Accordingly, for the reasons mentioned, the referee's order permitting rejection of the July 5, 1961 agreement is reversed and the case is remanded for further proceedings in conformity with this opinion. So ordered.