In the Matter of PATHE NEWS, INC., Debtor.

In Proceedings for Arrangement No. 63 B 647.

United States District Court
S. D. New York.

Dec. 4, 1967.

Rembar & Zolotar, New York City, for petitioners.

Hawkins, Delafield & Wood, New York City, for respondents, Robert G. Desmond, New York City, of counsel.

## OPINION

FREDERICK van PELT BRYAN, District Judge:

This is a petition to review an order of the Referee in Bankruptcy in a Chapter XI proceeding. The order dismissed an application of petitioners Messrs. Rembar & Zolotar, a firm of attorneys at law, to enforce their attorney's lien for services against allowed claims payable by the debtor to three creditors under a plan of arrangement which had been confirmed but not consummated. The dismissal was on the ground that after the plan had been confirmed the Bankruptcy Court no longer had jurisdiction to grant the relief sought. The sole question presented is whether under the circumstances here the Bankruptcy Court had power to grant such relief.

For purposes of this review the allegations of the petition must be taken to

be true. In substance they are as follows:

Petitioners Rembar & Zolotar rendered extensive services to Barnett Glassman (Glassman), Jack London Productions, Inc. (London), and Zenith Factors, Inc. (Zenith) creditors of the debtor in the Chapter XI proceedings. Such services included the prosecution of the respective claims filed by these creditors, representation of them at hearings on objections to their claims, the necessary legal work in connection therewith and representation on other phases of the Chapter XI proceedings. Glassman's claim was allowed in the sum of $38,589, of which $12,500 was subordinated to the claims of general creditors. The London claim was allowed in the sum of $65,146, and the Zenith claim in the sum of $6,814. The sum of $5,298 remains due and owing to Rembar & Zolotar for the services so rendered. On January 3, 1966 Rembar & Zolotar served a notice of their attorney's lien in this sum upon the Debtor and their attorneys, upon Hawkins, Delafield & Wood and upon other parties in interest, and a demand that the lien be satisfied out of any monies or property to which Glassman, London and Zenith might become entitled in connection with their claims by reason of any arrangement or otherwise.

On August 22, 1966, a proposed arrangement which had been pending for some time and which had undergone substantial revisions, was confirmed by order of the Referee.

Under the terms of the arrangement unsecured creditors received 15% of their claims. No deposit was made to cover the 15%. The plan provided for monthly payments to the creditors' designee for distribution on a pro rata basis. However, the claims of petitioner's clients, Glassman, London and Zenith were subordinated to the claims of other creditors and no payment is to be made thereon until the terms of the arrangement have been fully consummated and other creditors have been paid in full. Article IX of the plan provided that "the court shall retain jurisdiction pursuant to Sections 357(7) and 368 of the [Bankruptcy] Act."

A week after the plan was confirmed Rembar & Zolotar petitioned the Referee for the enforcement of their attorney's lien in the amount alleged to be due pursuant to § 475 of the New York Judiciary Law, McKinney's Consol.Laws, c. 30, against the claims of Glassman, London and Zenith allowed in the Chapter XI proceedings and any fruits of the arrangement to be received by these clients. In addition to the three creditor clients the petition named the debtor, two other corporations alleged to have entered into a settlement agreement with the creditor clients and the law firm of Hawkins, Delafield & Wood as respondents. Hawkins, Delafield & Wood answered the petition claiming an attorney's lien of their own for services rendered to these creditors other than in the Chapter XI proceedings and asserting want of jurisdiction in the Bankruptcy Court over the subject matter of the petition. The debtor appeared and took a largely passive role. The three creditor clients appeared by counsel but did not file an answer to the petition.

The Referee held that once the arrangement had been confirmed the Bankruptcy Court had no jurisdiction to enforce the attorney's lien of Messrs. Rembar & Zolotar against the claims of these creditors allowed in the Chapter XI proceedings for services rendered to them which resulted in such allowance. The Referee was of the view that jurisdiction was lacking because "there is no fund or res in the possession of the Bankruptcy Court or subject to its control to which the lien asserted by petitioners could attach." Whether the Referee was correct in so holding is the only question presented on this petition to review.

Section 475 of the New York Judiciary Law provides:

*"Attorney's lien in action, special or other proceeding.*

From the commencement of an action, special or other proceeding in any court or before any state, municipal or

federal department, except a department of labor, or the service of an answer containing counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien."

■■■ An attorney who prosecutes a proof of claim in a bankruptcy proceeding in this district has the attorney's lien given by Section 475 for the services he has rendered in connection with that claim. In re McCrory Stores Corp., 19 F.Supp. 691 (S.D.N.Y.1937); In re Baxter & Co., 154 F. 22 (2d Cir. 1907); In re United Cigars Store Co. of America, 9 F.Supp. 149 (S.D.N.Y.1934). "The filing of a proof of claim is 'the commencement of an action or special proceeding,' from which time the lien attaches." In re McCrory Stores Corp., supra, 19 F. Supp. at p. 693. By the same token if services are rendered in the prosecution of a claim already filed the attorney's lien attaches from the time such services commence.

■ Thus in the proceedings at bar Rembar & Zolotar had a lien for the services they rendered in the prosecution of the claims of Glassman, London and Zenith in this Chapter XI proceeding which accrued and attached as the services were rendered. See Markakis v. The S. S. Mparmpa Christos, 267 F.2d 926 (2d Cir. 1959). Such lien came into being by operation of law and continued to be attached to the claims of these creditors when they were allowed. Notice of the lien and demand for satisfaction had been served upon the debtor and other parties in interest more than six months prior

thereto. The lien for services rendered was valid and subsisting at the time the arrangement was confirmed. The lien was already in force and effect at the time the plan was confirmed and the allowed claims of these creditors were subject to such lien at that time and remained so thereafter.

Thus petitioners are not seeking to *establish* their lien in these proceedings. The lien was already established. What the petitioners are seeking here is the *enforcement* of such lien as they already possess.

The question of jurisdiction must be considered in the light of this posture of the lien sought to be enforced.

Section 357(7) of the Bankruptcy Act provides that an arrangement may include "provisions for retention of jurisdiction by the court until provisions of the arrangement, after its confirmation, have been performed; * * *." Section 368 provides that "the court shall retain jurisdiction, if so provided in the arrangement." Article IX of the arrangement in the case at bar specifically provided that "the court shall retain jurisdiction pursuant to Sections 357(7) and 368 of the Act." The provisions of the arrangement, after its confirmation have not yet been performed in this case. Thus the court retains a measure of jurisdiction during the period between the consummation of the proceeding and the entry of a final decree under § 372.[1]

■ It is true that the jurisdiction so retained is limited. It is operative "only to insure compliance with the terms of the arrangement and the statutory provisions, not to pass on all details of the debtor's business." Seedman v. Friedman, 132 F.2d 290, 295 (2d Cir. 1942). In *Seedman* the court held that the consent of the court was not a prerequisite to the validity of a contract entered into by the debtor pursuant to the express terms of a confirmed arrangement.

In the proceeding under review the Bankruptcy Court is not called upon to

1. For a general discussion of jurisdiction retained by the Bankruptcy Court pursuant to a provision in the arrangement see

9 Collier on Bankruptcy ¶¶ 9.28, 9.29 (14th ed. 1964); 9 Remington on Bankruptcy § 3653 (6th ed. 1955).

pass upon any details of the debtor's business or to curtail or alter any transaction expressly authorized by the arrangement. Here the court is merely asked to enforce lien rights in the Chapter XI proceedings which had already attached to the claims of these creditors and which were valid and subsisting as against such claims when the arrangement was confirmed. This was a matter of unfinished business in the proceedings as between these creditors on the one hand and their attorneys on the other. It in no way altered the terms of the arrangement, nor did it affect any rights of the debtor or the other creditors. Moreover, since the services which gave rise to the lien were performed in the Chapter XI proceedings the Bankruptcy Court in which such proceedings are still pending is best qualified to pass on such services and to fix reasonable value if that be necessary. No case has been called to my attention which holds that such a logical and sensible exercise of jurisdiction post-confirmation and pre-consummation is not authorized by the statute and I have found none.[2]

There are, of course, other provisions of Chapter XI conferring limited statutory jurisdiction on the Bankruptcy Court after confirmation and before consummation, even in the absence of a retention of jurisdiction provision in the arrangement such as § 367(3), jurisdiction over distribution of the consideration deposited for creditors; § 372, jurisdiction to enter a final decree on consummation discharging the receiver or trustee and closing the estate; § 386, jurisdiction to set aside the confirmation for fraud. In addition, § 369 provides that jurisdiction is retained until the final allowance or disallowance of all debts affected by the arrangement which

"(1) have been proved, but not allowed or disallowed, prior to the date of confirmation; or

(2) are disputed or unliquidated, have been scheduled by the debtor, and are filed within the time prescribed by Section 355 of this chapter."

Section 370 goes on to provide that upon the allowance of any such debts "the consideration, if any, deposited for them shall be distributed and the rights provided by the arrangement shall inure to the creditors to whom such debts are owing."

Taking the allegations of the petition to be true the rights of the creditors Glassman, London and Zenith to payment of their allowed claims as provided by this arrangement can inure to them only subject to the Rembar & Zolotar lien. The enforcement of that lien by the Bankruptcy Court as against the allowed claims of these creditors would merely be a recognition of the legal posture as it existed at the time of confirmation.

To define and delimit the respective rights of Rembar & Zolotar and those inuring to the creditor clients would seem to be a proper and legitimate exercise of the jurisdiction retained by the court in this case. It would be, in effect, judicial housekeeping within the framework of the proceedings and the arrangement made as part thereof. It would have the proper purpose of protecting the rights of attorneys rendering services in the proceedings, of warning the debtor of outstanding lien obligations against payable claims and of apprising the creditors of the extent of the lien to which their claims were subject.

2. As the Referee pointed out, none of the post-confirmation cases referred to in his opinion are controlling on the question presented here. See, e.g., In re Kalnitzsky Bros. & Oppenheim, 285 F. 649 (S.D.N.Y.), aff'd 285 F. 652 (2d Cir. 1922); In re Kessler, 90 F.Supp. 1012 (S.D.Cal.1950); In re J. B. Pollak Co., Inc., 86 F.2d 99 (2d Cir. 1936); In re Hunter Hotel Enterprises, Inc., 44 F. Supp. 614 (S.D.N.Y.1941). Nor do other cases dealing with post-confirmation jurisdiction offer a solution of the problem. See In re American Anthracite & Bituminous Coal Corp., 171 F.Supp. 377 (S. D.N.Y.), aff'd 280 F.2d 119 (2d Cir. 1959); In re Grayson-Robinson Stores, Inc., 227 F.Supp. 609 (S.D.N.Y.1964); In re WNCN, Inc., 246 F.Supp. 30 (S.D. N.Y.1965); Vogel v. Mohawk Elec. Sales Co., 126 F.2d 759 (2d Cir. 1942); In re Gordon, 44 F.Supp. 581 (S.D.N.Y.), aff'd 131 F.2d 863 (2d Cir. 1942).

■ I hold that under the jurisdiction retained pursuant to this arrangement the Bankruptcy Court has power to grant relief to these petitioners by way of an appropriate order for the enforcement of their lien against the allowed claims of their creditor clients if petitioners are entitled to such relief.

In my view it is not a prerequisite to the granting of such relief that there be a fund or res in the possession of the Bankruptcy Court or subject to its control as the Referee below thought. In so doing he relied on language from Nixon v. Michaels, 38 F.2d 420 (8th Cir. 1930), a straight bankruptcy case, that in the absence of "a res in the possession of the bankruptcy court, and in which res as a part of the bankrupt estate third parties claim rights, the bankruptcy court has no jurisdiction to allow such third parties to come into the bankruptcy court merely to litigate therein rights even against parties to the bankruptcy proceeding, and even though the property involved may once have been part of the bankrupt estate." Id. at 423. Evidently the Referee was of the view that Rembar & Zolotar were third party strangers to the Chapter XI proceedings and as such were not permitted to enforce claims foreign to the Chapter XI proceedings in the absence of a specific res in the possession of the Bankruptcy Court as part of the bankrupt estate. But Rembar & Zolotar are not in the position of third party strangers to the proceedings nor is their claim of lien foreign thereto. Their attorney's lien arose in the Chapter XI proceedings by operation of law. Once that claim arose and attached to the claims of their client creditors, Rembar & Zolotar as such lienors were legitimate parties to the proceedings and entitled to enforce their lien against the claims to be paid pursuant to the arrangement whether there was a specific res in possession of the court or not. For the question to be determined arose between parties to the proceedings over both of whom the Bankruptcy Court had jurisdiction as it also did over the subject matter of this dispute.[3]

For these reasons I hold that the Referee erred in denying the petition of Rembar & Zolotar for want of jurisdiction. In so doing, of course, I express no views on the merits of their application nor on the extent of the relief to which they may be entitled if their application is found to be meritorious. These are matters for the Referee to determine upon further appropriate proceedings before him.

The order of the Referee is reversed and the matter is remanded for further proceedings consistent with this opinion.

It is so ordered.

---

3. The difference between the position of Rembar and Zolotar and a third party stranger to the proceedings is illustrated by the contrast between their posture and that of Hawkins, Delafield & Wood, who raised the jurisdictional objection in this very case. Apparently whatever attorney's lien the Hawkins firm has arose for services rendered in State Court actions wholly outside the scope of and foreign to the Chapter XI proceedings. Thus Hawkins, Delafield & Wood are third party strangers to the bankruptcy proceedings and might well fall within the language of the *Nixon* case. Rembar & Zolotar plainly do not.