In re FOOD FAIR, STORES, INC., et al., Debtors.

FOOD DISTRIBUTION CENTER, Plaintiff,

v.

FOOD FAIR STORES, INC., and T Warehouse Corp., Defendants.

Bankruptcy Nos. 78 B 1764–78 B 1773 inclusive.

United States Bankruptcy Court, S. D. New York.

Jan. 8, 1982.

Levin & Weintraub, New York City, for debtor.

Dilworth, Paxson, Kalish & Levy, Philadelphia, Pa., for T Warehouse Corp.

Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for F.D.C. and Procacci Bros.

Sherman & Citron, New York City, for T Warehouse Corp.

Bruce Roswick, New York City, for Valley Foods, Inc.

Glass & Howard, New York City, for Procacci Bros.

## MEMORANDUM & ORDER

JOHN J. GALGAY, Bankruptcy Judge.

The disposition of a lease (Lease) of a location known as the Philadelphia Warehouse (Warehouse) has generated protracted litigation among the parties to the Lease and interested third parties. Essentially, Food Distribution Center (FDC), the lessor, seeks to terminate the Lease which was dated February 23, 1960. Food Fair, Inc., (Food Fair), the lessee and Debtor, seeks to assume and assign the Lease to T Warehouse Corp. (TW) or at least protect its already entered sublease with TW.

FDC bases its termination right upon: (1) a bankruptcy forfeiture clause in the Lease; (2) the closing of the Warehouse by Food Fair, pursuant to a court order; and (3) Food Fair's alleged failure to maintain and repair the premises. FDC requests that the stay of proceeding against the Debtor imposed by Bankruptcy Rule 11–44 be lifted so that FDC may pursue, in a court of appropriate jurisdiction, an action to terminate the Lease. The Court has considered the testimony, and evidence offered at the hearings related to this Lease, the papers submitted by all parties, and the applicable law. The Court concludes that it has jurisdiction to consider the issues regarding the

disposition of the Lease. The Court orders that the stay imposed by Bankruptcy Rule 11–44 be lifted for the limited purpose of permitting FDC to pursue an action, in an appropriate forum, to terminate the Lease for the alleged failure of the lessee to maintain and repair the Warehouse.

*Background*

On October 2, 1978, Food Fair and J. M. Fields filed petitions for arrangement under Chapter XI, Section 322 of the Bankruptcy Act. At the time of the filings the corporate complex consisted of approximately 490 food supermarkets and 79 discount department stores and food distribution centers, principally in New York, Pennsylvania, New Jersey, Maryland, and Florida. Among the food distribution centers leased by Food Fair was the Warehouse at issue here, located at Pattison Avenue, 11th Street, Darien Street, and the Delaware Expressway, Philadelphia, Pennsylvania.

On January 21, 1979, this Court authorized Food Fair to cease operations in the Philadelphia region including, *inter alia*, the Warehouse. By letter dated January 29, 1979, FDC claimed default of the Lease by Food Fair due to violation of lease paragraph 16, a bankruptcy forfeiture clause, which defines an event of default as occurring upon the filing of a petition in bankruptcy. Payments by Food Fair for the leasehold have been and continue to be tendered to and accepted by FDC since the filing of the petition. Whether these payments constitute rent, as Food Fair alleges, or use and occupancy charges, as FDC avers, is not an issue which the Court addresses here.

By application dated June 15, 1980, Food Fair sought an Order authorizing the assumption of the lease by Food Fair and its assignment to the highest bidder at a hearing before this Court. FDC countered with a complaint to lift the stay and cancel the Lease, on the grounds that Food Fair had filed a petition for arrangement and had closed the premises.

On September 9, 1980, at a hearing before this Court, T Warehouse Corp., was high bidder for Food Fair's leasehold interest in the Warehouse. An October 3, 1980 order of this Court authorized the assignment of the Lease to TW for $550,000. FDC took an appeal from that Order contending that the Lease was null and void, and thus, Food Fair, had no interest to transfer to TW. FDC obtained a stay of the assignment. By letter of December 12, 1980, FDC formally alleged default on the Lease by Food Fair's failure to repair or maintain the premises as required by Lease paragraph eight. On March 5, 1981, the Court entered an order which, *inter alia*, authorized the sublease of the Warehouse from Food Fair to TW for the sum of $700,000 which was to be held in escrow pending the outcome of litigation between Food Fair and FDC. That order also provided that "this [C]ourt shall retain jurisdiction in respect to the matters of the Settlement and any disputes with respect thereto." FDC took an appeal from this March 5th order, but parties dispute whether a stay was obtained by FDC. Food Fair avers that the sublease was consummated.

By letter of June 24, 1981, FDC again sought termination of the Lease because of Food Fair's failure to maintain repair. FDC also cited Food Fair's filing of a Petition under Chapter XI as a basis for finding default.

By summons and complaint filed July 17, 1981, Food Fair and TW sought injunctive relief against FDC's efforts to terminate the Lease and against an alleged champertous agreement between FDC and the Procacci Corporations (Garden State Farms, Inc. and Procacci Bros. Sales Corp.), a disappointed bidder for the Warehouse and prospective tenant if FDC is able to terminate the Lease. FDC responded with a complaint dated July 24, 1981, by which it sought to lift the stay or, alternatively, challenged the jurisdiction of this Court over the controversies concerning the Lease.

On July 29, 1981, this Court confirmed Food Fair's Amended Plan of Reorganization. Pursuant to Bankruptcy Act section 368, section 17 of that Plan authorized this Court to retain jurisdiction "to determine

any and all pending applications, adversary proceedings and litigated matter.... "

The threshold issue which this Court must address is whether the Court retains jurisdiction over this controversy, i.e. whether this Court has the "authority to decide the case either way." *The Fair v. Kohler Die Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). Jurisdiction questions can be raised on two grounds: (1) whether the Court has jurisdiction in the post-confirmation setting of the Food Fair case; and (2) whether this Court retains jurisdiction over the matter while appeals of its October 3, 1980 and March 5, 1981 orders (Orders) are pending.

■ The Court's post-confirmation power to decide this case is clear from the broad jurisdiction vested in this Court to "[c]ause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto...." Bankruptcy Act § 2(a)(7). Our Circuit Court, in *Law Research Service, Inc., v. Crook*, 524 F.2d 301, 314 (2d Cir. 1975), concurred with the Third Circuit's statement that under Bankruptcy Act, section 2(a):

> The tendency of judicial interpretation of the Act has been in the direction of progressive liberalization in respect of the operation of the bankruptcy power so as to meet the challenge of present day economic and business conditions. *In re International Power Securities Corp.*, 170 F.2d 399, 402 (3d Cir. 1948).

■ A liberal view of the Court's jurisdiction is clearly indicated. Indeed "bankruptcy court jurisdiction has been expanded to meet the exigencies of particular fact situations." *Law Research Service, Inc. v. Crook*, 524 F.2d 301, 314 (2d Cir. 1975).

■ The jurisdiction over a debtor's property does not end upon confirmation of a plan of arrangement. "[A] bankruptcy court, having taken possession of property, cannot properly hand it to one of two conflicting claimants without determining who is entitled to receive it." *Id.* at 316. This jurisdiction exists regardless of a provision in the plan of arrangement pursuant to Act § 368 which retains jurisdiction. The Court in *In re Kessler*, 90 F.Supp. 1012 (S.D.Cal. 1950), affirmed the post-confirmation jurisdiction of the bankruptcy court to consider the validity of a mortgage, stating:

> [T]he bankruptcy court now has jurisdiction after confirmation of an arrangement under the present statute to hear and determine known claims to property remaining in its possession, regardless of whether the confirmed arrangement includes express provision for retention of such jurisdiction pursuant to § 368. *Id.* at 1015 (citations omitted).

The Courts in *Law Research* and *Kessler* followed the reasoning of Judge Learned Hand in *In re Kalnitzsky Bros. & Oppenheim*, 285 F. 649 (S.D.N.Y.), *aff'd per curiam*, 285 F. 652 (2d Cir. 1922), who asserted that it is the Court's duty to adjudicate claims over property in its possession and that "the confirmation does not affect the situation at all." *Id.* at 651.

This Court retains possession of the prime Lease, the sublease, and the escrow account. Regardless of confirmation, this Court maintains jurisdiction to determine the opposing claims concerning the leases and the escrow monies.

■ The second jurisdictional issue is whether this Court retains jurisdiction over the matter after its Orders of October 3, 1980, and March 5, 1981, have been appealed. Those appeals which have been consolidated, divest this Court of its jurisdiction only with respect to the questions raised and decided in those Orders. The jurisdiction which this Court has over all other matters is in no way impaired. *See U.S. v. Crescent Amusement Co.*, 323 U.S. 173, 177, 65 S.Ct. 254, 256, 89 L.Ed. 160 (1944); *Compania Espanola de Petroleos, S. A. v. Nereus Shipping, S. A.*, 527 F.2d 966, 972 (2d Cir. 1975). The matters on appeal and the issues remaining before this Court are somewhat interrelated but remain distinct. The issues concerning the bankruptcy forfeiture clause, the closing of the Warehouse pursuant to an order of this Court, and the asserted breach of the lease because of

Food Fair's alleged failure to maintain and repair have not been resolved by those Orders now on appeal. They remain before this Court and this Court retains the jurisdiction to address them.

With jurisdiction established, this Court now considers FDC's request to lift the stay imposed under Rule 11–44 so that it may pursue in State Court its action to terminate the lease. Rule 11–44 authorizes the Court to terminate, annul, modify, or condition the stay "for cause shown." Bankruptcy Rule 11–44(d). "The granting or denial of relief under Rule 11–44(d) lies within the discretion of the court. . . ." *In re Soltoff*, 1 B.R. 180, 182 (Bkrtcy.E.D.Pa.1979).

The question of what constitutes "for cause shown" has generated two different standards for such a showing. Courts have required the party seeking relief from the stay to show that continuation of the stay would cause it irreparable harm. *See In re Soltoff*, 1 B.R. 180 (Bkrtcy.E.D.Pa.1979); *In re The Overmyer Company*, 2 BCD 992 (S.D.N.Y.1976). Courts have also considered vacating the Rule 11–44 stay after balancing the equities of the case. The Court in *In re Zeckendorf*, 326 F.Supp. 182, 184 (S.D.N.Y.1971) stated:

> [A] stay should not be rigidly enforced when no sound reason is shown to require it and where there is good reason for its modification. (citations omitted)

██ No showing of irreparable harm has been made by FDC, but upon a balancing of the equities, this Court has determined that good reason exists for lifting the stay.

The Court in *In re Young Properties Corp.*, 5 CBC 414 (B.C.S.D.Cal.1975), determined that a stay may be vacated in the interests of judicial economy. *Id.* at 417. The factors establishing a finding of judicial economy, according to the *Young Properties* Court were:

> (1) Issues [that] are entirely local rather than Federal and that the State Court is a more convenient and appropriate forum to determine them. . . .
>
> (2) A State Court trial will result in liquidation of the . . . Plaintiff's claim. . . .

> (3) The prosecution of the action in the State Court will not interfere with the proper administration of the debtor's estate, nor with the formulation of the plan of reorganization.

*Id.* at 416–417.

Lifting the stay and permitting FDC to pursue its action in the State Court will not interfere with the administration of the debtors estate or reorganization, as evidenced by the fact that Food Fair has offered and had confirmed its Amended Plan of Reorganization while the instant case was proceeding. Lifting the stay and permitting FDC to pursue its State Court action will also resolve much of the dispute regarding the Lease. However, not all of the grounds upon which FDC seeks relief are entirely local in nature. The applicability of a bankruptcy forfeiture clause is an issue involving, *inter alia*, questions of federal bankruptcy law and is appropriate for adjudication by this Court, not the State Courts. Food Fair's closing of the premises was done pursuant to an order of this Court and, again, any breach based on such an action is appropriate for adjudication in this Court, not the State Courts. FDC has previously agreed not to seek termination of the lease by confession of judgment. The only basis for termination remaining is FDC's allegation of breach by failure to maintain and repair the Warehouse. This allegation involves issues that are entirely local in nature and readily susceptible to prompt State Court resolution. *In re Soltoff*, 1 B.R. 180, 182 (Bkrtcy.E.D.Pa.1979). The disposition of the Lease will directly affect the sublease of a parking lot located on the same property as the Warehouse. The parking lot serves, among other places, the local sports stadium. The parties have stated that the parking lot lease is a particularly lucrative one. Thus, other real estate interests, local constituencies, and municipal concerns will be affected by any decision regarding the Lease. The State Court is a more appropriate forum to weigh such interests and understand the ramifications of any decision on the Lease.

Therefore, the stay may be lifted to permit FDC to pursue an action in an appropriate forum for the limited purpose of determining whether the Lease has been breached by the alleged failure of Food Fair to maintain and repair the Warehouse.

This Court is empowered to prevent any final action from being taken without further order of the Court. *See In re The Royal Scot, Ltd.*, 8 CBC 239, 246 (B.C.W.D. Mich.1976). Thus, this Court orders that no final action regarding the disposition of the Lease and Warehouse may be taken without further order of this Court.

It is so ordered.