### In re J.M. FIELDS, INC., Food Fair, Inc., Debtors.

### Arrangement No. 78 B 1764.

United States Bankruptcy Court, S.D. New York.

Jan. 19, 1983.

---

Levin & Weintraub, New York City, for debtors.

Glass & Howard, New York City, for Boothe.

### MEMORANDUM & ORDER

JOHN J. GALGAY, Bankruptcy Judge.

By order to show cause dated July 2, 1981, and returnable on August 25, 1981, J.M. Fields, Inc., Food Fair, Inc., *et al.* debtors and debtors in possession ("Food Fair"), sought a court order, pursuant to Bankruptcy Act section 313(1), permitting the rejection and disaffirmance of a series of leases, including a lease for a store located at 8551 Landover Road, Landover, Maryland ("Store 376"). On July 8, 1981, Food Fair's amended plan of reorganization was confirmed.

Boothe Financial Corporation ("Boothe" or "Landlord"), the lessor of Store 376, filed

a response dated August 19, 1981, initially contesting this Court's post-confirmation jurisdiction generally. Boothe argued that the retention of jurisdiction provision of the debtor's Amended Plan is overly broad and, thus, invalid. Subsequently, Boothe augmented its objection to Food Fair's application for rejection, arguing that a lease may not be rejected after confirmation, regardless of a retention clause. Finally, Boothe asserted that, even if Court jurisdiction exists and a lease can be rejected after confirmation, this Court should not permit rejection of the Store 376 lease because the lease is not burdensome. Ultimately, Boothe seeks to avoid the rejection of its lease so that the lease obligation for the full term falls on Food Fair or its reorganized corporate entity, Pantry Pride. If rejection is permitted, Boothe could recover only those limited damages for rejection delineated by Bankruptcy Act section 353.

This Court has considered the papers submitted, the oral arguments presented, and the applicable law. This Court holds that Food Fair properly exercised, prior to confirmation, its authority to reject the lease pursuant to Act section 313(1). Further, this Court retains jurisdiction after a plan has been confirmed to consider the debtor's pre-confirmation request for a Court order permitting rejection of a lease. Finally, based upon the record made before this Court, including the facts to which both parties stipulate, the Court exercises its discretion and permits the rejection of the lease for Store 376.

*Background*

On October 9, 1973, Lanning Corporation, Boothe's predecessor-in-interest, leased Store 376 to Food Fair. The lease expires on April 30, 2000. Food Fair was primarily engaged in the business of operating supermarkets in Maryland, Virginia, and Florida. On October 2, 1978, Food Fair filed a Chapter XI petition for arrangement under sec-

tion 322 of the Bankruptcy Act ("Act") and Bankruptcy Rule of Procedure 11–6.

Efforts by Food Fair to assign the Store 376 lease or to obtain a subtenant were fruitless. Food Fair asserts that Store 376 was unprofitable or marginal at best and that continued operations would result in a substantial financial drain upon Food Fair. The closing of Store 376 was part of an overall termination of Food Fair operations in the Baltimore, Maryland area.

On July 2, 1981, Food Fair moved by order to show cause pursuant to Act section 313(1)[1] to reject various leases, including the lease for Store 376. The show cause order was made returnable on August 25, 1981.

Food Fair's Amended Plan was confirmed on July 8, 1981. Article XVII of the Amended Plan provided, pursuant to Act section 368,[2] for the retention of jurisdiction by this Court "exclusively for the following limited purposes," including, *inter alia:*

> (c) to determine any and all noticed or pending applications . . . for the rejection or affirmance and assignment, as the case may be, of leases respecting premises occupied by any of the Debtors . . . and if need be to liquidate, any and all claims arising thereform . . .
>
> (d) to determine any and all pending applications, adversary proceedings and litigated matters . . . .

Amended Consolidated Plan of Arrangement dated December 15, 1980, as modified, *In re J.M. Fields, Inc., Food Fair, Inc., et al.* Article XVII ¶ 17.01(c), (d) (July 6, 1981) [hereinafter "Amended Plan"].

I. *Post-Confirmation Jurisdiction—Generally*

Boothe initially argues that the Amended Plan's retention provision grants the Court impermissibly broad jurisdiction after confirmation. The statutory parameters of

---

**1.** Act section 313(1), in pertinent part, states:

Upon the filing of a petition, the court may . . .

(1) permit the rejection of executory contracts of the debtor, upon notice to the parties to such contracts . . . .

**2.** Act section 368, states:

The court shall retain jurisdiction, if so provided in the arrangement.

post-confirmation jurisdiction are set by Act sections 357, 367 and 368. Section 367, in pertinent part, states:

Upon confirmation of an arrangement...

(4) except as otherwise provided in sections 369 and 370 of this Act, the case shall be dismissed.

Section 357, in pertinent part, states:

An arrangement ... may include:

(7) provisions for retention of jurisdiction by the Court until provisions of the arrangement, after its confirmation, have been performed; and

(8) any other appropriate provisions not inconsistent with this chapter.

Section 368 authorizes the court to retain jurisdiction, "if so provided in the arrangement."

Booth urges a "restrictive interpretation" of post-confirmation jurisdiction, arguing that retention clauses may grant only that jurisdiction necessary "to insure compliance with the terms of the arrangement and the statutory provisions...." *Seedman v. Friedman,* 132 F.2d 290, 295 (2d Cir.1942).[3]

Boothe argues that the Court's post-confirmation jurisdiction granted by Article XVII is of breadth equal that it exercised prior to confirmation thus involving the Court in continuous and active control over the debtor's business. *See Seedman v. Friedman, supra.* Such pervasive post-confirmation jurisdiction, if present, would defeat the purpose of reorganization and confirmation, namely the return of the corporation to the marketplace, free of judicial control and scrutiny.

■ This Court rejects Boothe's position regarding the general principles of permissible post-confirmation jurisdiction as applied here. First, Boothe disregards the clear, limiting language of Article XVII. This Court's post-confirmation authority is restricted to only those matters pending at the time of confirmation. This grant is not one which keeps the debtor corporation in

"perpetual tutelage" to the Court, subject to Court supervision and control over all aspects of corporate conduct. *Claybrook Drilling Co. v. Divanco, Inc.,* 336 F.2d 697, 701 (10th Cir.1964).

Second, this Court, in addressing the permissible scope of post-confirmation jurisdiction, has noted a trend broadly construing the Court's power in the post-confirmation period, rejecting the restrictive view urged by Boothe. *Food Distribution Center v. Food Fair Stores, Inc. and T Warehouse Corp.,* 16 B.R. 387 (Bkrtcy.S.D.N.Y.1982); *In re Centennial Industries, Inc.,* 12 B.R. 99 (Bkrtcy.S.D.N.Y.1981) (hereinafter "Centennial I"); *see Law Research Service, Inc. v. Crook,* 524 F.2d 301 (2d Cir.1975); *In re Forro Precision, Inc.,* 20 C.B.C. 200 (Bankr. C.D.Calif.1979).

Third, principles of judicial economy and housekeeping favor a finding of jurisdiction. Food Fair's application was pending at confirmation before the Court most familiar with the case and proceedings therein. Resolution of unfinished matters pending before this Court is appropriate. *See generally In re Pathe News, Inc.,* 276 F.Supp. 670, 673 (S.D.N.Y.1967); *Food Distribution Center, supra.*

Finally, this Court is loathe to find jurisdiction lacking and Article XVII invalid after having confirmed the plan which provided for such retention of jurisdiction. Provision for jurisdiction over pending applications to reject leases in an essential element of the Amended Plan and an appropriate subject of post-confirmation jurisdiction.

■ Therefore, this Court upholds the Article XVII provision of Food Fair's Amended Plan, finding such provision effective, pursuant to Act section 368, in vesting this Court with post-confirmation jurisdiction. Such a holding is consonant with this Court's previous decisions in *Food Distribution Center, supra,* and *Centennial I, supra. In Food Distribution Center,* this

---

**3.** The precedential value of *Seedman v. Friedman, supra,* is questionable, for the *Seedman* Court limited its holding to "the circumstances of this case...." 132 F.2d at 295; *see In re Langsam,* No. 19858 at p. 6, Bankr.L.Rep. (CCH) ¶ 58,478 (D.Minn. Oct. 25, 1955).

Court retained jurisdiction to resolve a controversy pursuant to a plan that contained a retention of jurisdiction clause and where the properties subject to conflicting claim were in the possession of the Court. In *Centennial I,* the debtor filed a complaint objecting to the claim of a creditor and also sought recovery of preferential payments pursuant to Bankruptcy Act section 57(g). The order of this Court confirming Centennial's plan allowed objections to claims to be filed within 60 days. Centennial filed its objection within 60 days. Accordingly, this Court found that it retained jurisdiction to hear all controversies affecting the allowance process including an Act section 57(g) objection. *See Katchen v. Landy,* 382 U.S., 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1965).

Boothe has cited this Court's decision in *In re Centennial Industries,* No. 78 B 1658 (Bankr.S.D.N.Y. Mar. 15, 1981) (hereinafter *"Centennial II"*), as support for a restrictive interpretation of this Court's post-confirmation jurisdiction. The issue in that case involved a challenge to the summary jurisdiction of the Bankruptcy Court to determine a controversy commenced before confirmation. The debtor had initiated an adversary proceeding against defendants for the turnover of property and monies owed. The Bankruptcy Court did not have possession of the property or monies claimed, debtor had never filed an answer to defendant's objection to summary jurisdiction, no hearing was held prior to confirmation on the question of summary jurisdiction of this Court, and no provision either in the order of confirmation or the plan of arrangement expressly provided for the retention of jurisdiction by the Court over the adversary proceeding. Thus, *Centennial II* is clearly distinguished from the case now before the Court.

II. *Post-Confirmation Jurisdiction to Approve Pending Application to Reject an Executory Contract*

■ While this Court affirms that the post-confirmation jurisdiction retained pursuant to a retention clause is valid, the question remains whether rejection of executory contracts is within the ambit of such jurisdiction.

Boothe argues that in order to harmonize various sections of the Bankruptcy Act the Court must hold that the debtor's attempt to reject the lease is an impermissible exercise of power after the confirmation of a plan. Such a holding, according to Boothe, would render the general question of the Court's post-confirmation jurisdiction immaterial, for Food Fair would lack the power to seek rejection in this Court.

Boothe cites but one case in support of its statutory harmonization, *Consolidated Gas Electric Light and Power Co. of Baltimore v. United Railways & Electric Co.,* 85 F.2d 799 (4th Cir.1936) a Fourth Circuit railroad reorganization case. The *Consolidated Gas* Court invalidated a retention provision by which the lower court reserved jurisdiction "to instruct the receivers with respect to the disaffirmance of the [executory] contract...." 85 F.2d at 801. The Court expressed keen concern for the interests of other creditors, to whom no disclosure of the executory contract was made. 85 F.2d at 803. *Consolidated Gas* is inapplicable to the case before this Court. A railroad reorganization case, *Consolidated Gas* predates the clear trend toward broader post-confirmation jurisdiction. The retention clause in *Consolidated Gas* is overly broad, granting jurisdiction to the Court to instruct receivers—a post-confirmation intervention, into corporate conduct—with respect to the disaffirmance of executory contracts, even though applications for such disaffirmance were not pending.

In relying on *Consolidated Gas,* Boothe misapprehends the status of the case before this Court and therefore misstates the issue. Food Fair's application, pursuant to Act section 313(1), to reject the lease for Store 376 was brought prior to confirmation and was pending at the time of confirmation. Food Fair had exercised, prior to confirmation, its right to seek court permission to reject an executory contract. Thus understood, the issue is not Food Fair's power to reject the lease but rather this Court's authority pursuant to action 313(1) and

Amended Plan Article XVII to permit the rejection of the lease in the post-confirmation period. The statute does not deny this Court such authority and the case law is unclear. Resort to equitable powers of the Bankruptcy Court is appropriate. *See In re Miracle Mart, Inc.,* 396 F.2d 62, 64 (2d Cir. 1968).

Any party injured by the rejection of a lease shall be deemed a creditor for the purposes of, *inter alia,* participation in the formulation and acceptance or disapproval of a plan of arrangement. Bankruptcy Act § 353. Boothe asserts that post-confirmation rejection would deny it such participation and invite debtors to block participation of potentially hostile creditors by waiting until after confirmation to reject executory contracts. Boothe cites *In re Grayson-Robinson Stores, Inc.,* 227 F.Supp. 609 (S.D. N.Y.1964) as particularly applicable to the instant case. However pertinent such concerns were in *Grayson-Robinson,* Boothe's invocation of that case is inapposite.

In *Grayson-Robinson,* an executory contract for the transfer of stock for debentures was omitted from the statement of executory contracts which was filed with the bankruptcy petition. The debtor did not rectify the omission and just prior to confirmation the debtor obtained a show cause order returnable after confirmation to reject the contract. The debtor's plan of arrangement did not provide for post-confirmation retention of jurisdiction over pending matters. 227 F.Supp. at 613.[4] The debtor's failure to disclose the executory contract on its schedules was the key to the district court's holding that the bankruptcy court had no jurisdiction to authorize rejection of the contract after confirmation. This omission denied the beneficiaries of the contract notice of the pending reorganization proceeding and the opportunity to participate in the formulation and approval or disapproval of the plan. Further, the lack of notice denied the contract beneficiaries the right to institute a proceeding

insisting that the contract be assumed or rejected. *See In re Greenpoint Metallic Bed Co.,* 113 F.2d 881 (2d Cir.1940). Finally, the omission denied the debtor's other creditors the knowledge of the contract and thus the ability to judge the benefits and burdens of it and the potential claims arising from its rejection.

The factors in the *Grayson-Robinson* case which prompted that court to deny post-confirmation jurisdiction to reject an executory contract are largely absent in the case before this Court. Boothe does not contend that the Store 376 lease was omitted from Food Fair's schedules. Also, Boothe had notice of Food Fair's reorganization proceeding. While Boothe cannot be deemed a creditor with the right to vote on a plan until its lease is rejected, Boothe could, by virtue of its knowledge of the reorganization proceeding, "participate in the discussions relevant to the plan" if it so chose. *See In re Grayson-Robinson Stores, Inc.,* 227 F.Supp. at 613. More important, once apprised of the reorganization proceeding, Boothe, a non-debtor party to an executory contract, was aware of its "equivocal position" which would persist until its contract was assumed or rejected. *See In re Greenpoint Metallic Bed Co.,* 113 F.2d 881, 883–4 (2d Civ.1940), *citing Mohonk Realty Corp. v. Wise Shoe Stores, Inc.,* 111 F.2d 287 (2d Cir.1940). Thus informed, Boothe could act to protect its rights by instituting a proceeding:

> Until his contract is rejected, he [non-debtor party to an executory contract] is not a creditor with a provable claim; but he is not helpless, for he may insist that his contract be either accepted or assumed under the plan and may apply to the bankruptcy court to protect his interest. . . .

*In re Greenpoint Metallic Bed Co.,* 113 F.2d at 884; *see Texas Importing Co. v. Banco Popular de Puerto Rico,* 360 F.2d 582, 584–5 (5th Cir.1966).

---

4. The order of confirmation provided for retention of jurisdiction over all pending matters, but the district court stated that, pursuant to

act section 368, such provision must be made in the plan of arrangement. 227 F.Supp. at 613.

Exercise by a lessor of this power to protect its rights has been construed as an affirmative duty:

A landlord has an obligation to act affirmatively to protect its rights by prescribed methods.

*In re Food World, Inc.,* 3 B.C.D. 1058, 1060 (Bankr.S.D.Ohio 1976) (citations omitted); *see In re Bohack Corp.,* 2 B.C.D. 396, 397 (Bankr.E.D.N.Y.1976) ("onus is placed on landlord to clarify his status through the auspices of the Court"). Boothe chose not to institute proceedings to have its lease affirmed or rejected; it would be inequitable to permit Boothe to block a pending application for rejection now.

Unlike in the *Grayson-Robinson* case, Food Fair's other creditors were apprised of the Store 376 lease, from both the debtor's schedules and the Amended Plan; therefore, the creditors could consider the lease and claims arising from rejection in evaluating the debtor and the Amended Plan.

Other factors favor a finding of post-confirmation jurisdiction to permit rejection of a lease. Requiring final determination prior to confirmation of all applications to reject a lease, with subsequent appeals and possible imposition of stays, would postpone confirmation of a debtor's plan of arrangement, thus impeding the debtor's rehabilitation and return to the marketplace. Such an outcome thwarts the very aim of reorganization proceedings. *See Claybrook Drilling Co. v. Divanco, Inc.,* 336 F.2d 697 (10th Cir.1964). Delay would also preclude payment to other creditors. These results are particularly intolerable when the delay could have been avoided by the non-debtor party instituting proceedings to have his executory contract affirmed or rejected.

Given the previously examined, broad latitude of post-confirmation jurisdiction, the balancing of the equities, and the facts of this case, this Court holds that it may properly permit the rejection of a lease after confirmation, the application for which was made prior to and was pending at confirmation.

### III. *Should Rejection of the Store 376 Lease be Permitted*

Having found that the retention of post-confirmation jurisdiction provision is valid and that such jurisdiction may encompass applications pending at confirmation seeking permission to reject leases, the final issue is whether the requisite showing for rejection by the debtor has been made.

The decision to reject is essentially one of business judgment exercised by the debtor. *See 2 Collier on Bankruptcy* ¶ 365.03 at 365–14 (15th ed. 1982). Store 376 was closed as part of an overall cessation of the debtors operations in the Baltimore, Maryland area, necessitated by substantial losses sustained there. Efforts to market the leasehold were undertaken, yet failed.

Based upon such facts demonstrating burdensomeness and the debtor's business judgment, this Court will exercise its discretion, pursuant to Act section 313(1), and permit the rejection of the lease for Store 376.

A claim arising from the rejection of an executory contract may be filed within such time as the Court may direct. Bankruptcy Rule of Procedure 11–33(b)(2)(B).[5] The Court directs Boothe to file its claim within 30 days of the entry of this order.

It is so ordered.

---

**5.** The commentary accompanying rule 11–33(b)(2) notes that the time prescribed may be before or after confirmation, thus consistent with today's holding permitting the rejection of leases after confirmation (the applications for which were pending before confirmation). *See 9 Collier on Bankruptcy* ¶ 7–15[7] at 88 (14th ed. 1978).