In re GREENPOINT METALLIC BED CO., Inc.

No. 401.

Circuit Court of Appeals, Second Circuit.

Aug. 19, 1940.

CHASE, Circuit Judge, dissenting in part.

Samuel Rubin, of New York City, for appellant.

Delafield, Marsh, Porter & Hope, of New York City (Eugene Blanc, Jr., of New York City, of counsel), for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

On December 13, 1939, the debtor filed a petition for an arrangement under Chapter XI of the Chandler Act, 11 U.S.C.A. § 701 et seq., and orders were made continuing the debtor in possession and referring the proceeding to one of the referees in bankruptcy. The proposed arrangement provided for the transfer of the debtor's assets to a new corporation which should deposit cash sufficient to pay in full all secured and priority creditors of the debtor and to pay 20 per cent. on the claims of unsecured creditors. The appellant, Ratner, was in the employ of the debtor under a written contract providing for a term of service extending to December 31, 1940, at a weekly salary of $75 up to February 1, 1940, and $100 thereafter. Neither the debtor's petition nor the proposed arrangement mentioned Ratner's contract; no statement of it was filed as required by section 324, 11 U.S.C.A. § 724, and no provision was made to pay him salary during the debtor's continuance in possession prior to confirmation of the arrangement. The debtor's schedules listed Ratner as an employee entitled to priority payment of $50 for earned wages. Ratner was informed of the foregoing facts on the evening of December 13th. For the purpose of preserving his supposed rights under the contract he continued to report daily at the office of the debtor in possession but was told there was nothing for him to do, unless he wished to attempt to sell certain property on commissions. By letter dated January 2, 1940, the debtor in possession notified Ratner that his contract was terminated "as of this day" because "you have broken your contract with us." He replied by letter dated January 4th denying any breach of contract on his part, formally tendering his services and asserting his intention to hold "you and your successors" fully accountable for performance of the contract and for damages for breach thereof. January 4th was the date previously set by the referee as the last day for the filing of claims of creditors. Ratner had received due notice thereof, but filed no claim. Thereafter, on January 16, he brought on before the referee a motion for an adjudication (1) that his contract was not terminated by the filing of the debtor's petition or plan of arrangement and that it was in full force and effect and survived the arrangement, and that any transfer of the assets should be subject to his rights; or (2) that breach of the contract by the debtor in possession gave him a claim entitled to priority of payment; or (3) that he is a creditor materially and adversely affected by the proposed arrangement and the plan should make provision for paying in full creditors having executory contracts; and (4) that confirmation of the proposed arrangement be stayed until determination of the status of his contract and the claim thereunder. After hearings the referee made an order dated February 2, 1940, denying the motion and allowing Ratner's claim only in the amount of $50, for which it was listed in the debtor's schedules. On March 8th the District Court affirmed the referee's order; Ratner promptly appealed. In the meantime, on February 17th, the arrangement was confirmed. No review of the order of confirmation was sought. From motion papers filed in this court it appears that the cash deposited by the new corporation is $1,006.50 in excess of the amount necessary to carry out the terms of the arrangement and disposition of such excess deposit has been stayed pending determination of this appeal.

The referee found that there had been no breach of contract by Ratner up to the time of the filing of the debtor's petition and it was then in existence as an executory contract provided it was valid. He held it invalid because of the provisions of paragraph 14 declaring that it should be binding on the employer in the event of any corporate reorganization under the Chandler Act. The District Judge, however, correctly ruled that the invalidity of that paragraph would not vitiate the entire contract. Consequently, discussion must start upon the premise that Ratner had a valid executory contract with the debtor when its petition was filed.

As this court pointed out in Mohonk Realty Corp. v. Wise Shoe Stores, Inc., 2 Cir., 111 F.2d 287, the holder of an execu-

'tory contract with the debtor occupies an equivocal position. Until his contract is rejected he is not a creditor with a provable claim; but he is not helpless, for he may insist that his contract be either rejected or assumed under the plan and may apply to the bankruptcy court to protect his interest at the confirmation hearing or before. The provisions of Chapter X, 11 U.S.C.A. § 501 et seq., which were discussed in the case above cited have their counterparts in Chapter XI. Section 353 provides that if an executory contract shall be rejected pursuant to the provisions of an arrangement or to permission of the court (see sec. 313) "any person injured by such rejection shall, for the purposes of this chapter and of the arrangement, its acceptance and confirmation, be deemed a creditor." Section 357 provides that an arrangement may include "(2) provisions for the rejection of any executory contract."

The referee found that there had been no rejection under section 353, through the plan, or by permission of the court. Whether the arrangement effected a rejection of the contract presents a question of law not entirely free from doubt. It contained no express rejection and it provided that the new corporation should acquire from the debtor "all its assets." But from the fact that no "statement" of Ratner's contract accompanied the debtor's petition, no provision was made for payment of salary to him while the debtor continued in possession, and no mention of the contract was contained in the arrangement, it seems clear that the debtor's executory contract with Ratner was not intended to be one of the assets transferred to the new corporation. If an arrangement may tacitly reject an executory contract, we think the debtor's arrangement did so. In that event Ratner thereupon became a creditor and, having full knowledge of the facts, he had ample time to file his claim as such before expiration of the bar order on January 4th. But we are constrained to believe that the statute does not authorize a tacit rejection of an executory contract. Section 324 requires the petition to be accompanied by "a statement of the executory contracts of the debtor"; section 357 provides that an arrangement "may include * * * (2) provisions for the rejection of any executory contract"; and section 353 refers to rejection "pursuant to the provisions of an arrangement." These sections indicate, in our opinion, that express provisions of rejection are required to effect the rejection of an executory contract by the terms of an arrangement. See 2 Gerdes, Corporate Reorganizations, § 713. Consequently, no rejection had occurred prior to January 4 and Ratner was not a creditor to whom the bar order applied.

Before confirmation of the arrangement he brought on his motion to fix his status under his contract with the debtor. This motion was timely, and the referee should have ordered the contract to be rejected and should have fixed a time for proving the claim arising from such rejection. Section 369(3). Such claim was entitled to share on a parity with other unsecured creditors under the arrangement. As Ratner did not appeal from confirmation of the arrangement he cannot attack that order; but since there happens to be an excess deposit still within the court's control, we see no reason why he may not still be allowed to prove the damages resulting from rejection of his contract and receive a payment of 20 per cent. thereof out of the excess deposit. See Section 369.

The appellee argues that the appeal should be dismissed because the appellant has accepted payment of the $50 for which his claim was allowed by the order appealed from. The principle that one may not accept the benefits of a judgment and at the same time try to set it aside is well established. Smith v. Morris, 3 Cir., 69 F.2d 3. But the principle is inapplicable here. Assuming the payment to have been made and accepted, although the record does not so disclose, it was made pursuant to the order of confirmation, not the order on appeal.

The order is reversed and the cause remanded for further proceedings in conformity with this opinion.

CHASE, Circuit Judge (dissenting in part).

I agree that the appellant was entitled to have his executory contract either affirmed or disaffirmed and that in the latter event he would have been a creditor entitled to be treated as such so long as the terms of the plan of arrangement remained open. But he failed to appeal from the order confirming the debtor's arrangement. Its provisions have, therefore, now become binding upon him just as they have upon all other creditors and upon the debtor. There has been no deposit for any claim for damages

resulting from the rejection of his executory contract to be distributed under Sec. 369 of the statute and the so-called excess deposit is payable under the terms of the arrangement to the attorneys for the debtor. It seems to me clear on this record that, in his zeal to force an adoption of his executory contract, the appellant failed to preserve the substance of his alternative rights as a claimant for damages by reason of its rejection. In order to share further than he has already in the confirmed arrangement, the terms of that will have to be modified and, if the appellant has, indeed, already accepted the payment of the claim allowed him under that plan he is now estopped upon remand from attacking its other provisions including, of course, the one making any express deposit payable to the attorneys for the debtor. Smith v. Morris, 3 Cir., 69 F.2d 3.

I would affirm on the ground that the arrangement as confirmed has finally fixed the rights of the parties.