In the Matter of Federal's, Inc., a Michigan Corporation, Debtor.

**FEDERAL'S, INC., a Michigan Corporation, Plaintiff,**

v.

**EDMONTON INVESTMENT COMPANY, a Michigan co-partnership, Defendant.**

No. 72–1933–P.

United States District Court, E. D. Michigan, S. D.

Oct. 24, 1975.

As Amended Nov. 19, 1975.

Sheldon S. Toll, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for plaintiff.

Lewis Daniels, James M. Wienner, Detroit, Mich., for defendant.

### MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

These cross appeals in bankruptcy raise questions about the debtor's and receiver's liability for an unexpired real property lease affected by a Chapter XI arrangement.[1] The subject of dispute is a 20-year lease agreement, dated January 11, 1971, requiring monthly rent payments of $11,288.98 plus taxes and interest. Under the terms of the lease, Federal's, Inc., the debtor and lessee, had the right to assign its rights under the lease, but continued liable on the lease for any assignments made without the prior written consent of the lessor, Edmonton Investment Company.[2] The bankruptcy judge found that on June 24, 1972, Federal's made such an unconsented assignment to Federal Hardware and Supply, Inc., a subsidiary of Federal's, Inc. Shortly thereafter, on August 16, 1972, Federal's filed a petition under Chapter XI of the Bankruptcy Act, and a receiver was appointed. The filing of a petition for an arrangement was an event of default under the lease,[3] giving the landlord a right to terminate the lease.[4]

Beginning February 21, 1973, all notices from the debtor to creditors in the arrangement proceedings were sent to Edmonton, and Edmonton was scheduled as a lessor of an assigned lease to whom Federal's was "contingently" liable in the amount of $10.00.[5] On October 1, 1973, after the Edmonton lease had been scheduled, Federal Hardware defaulted. Edmonton promptly sent Federal's, Inc., written notice of default. On November 9, 1973, Edmonton filed a petition in the arrangement proceedings seeking to establish the receiver's liability for unpaid rentals during the period of his receivership. The confirmation order was entered on December 11, 1973, and the Edmonton lease was not rejected, although many other leases of real property were rejected. Edmonton never filed a claim. On May 6, 1974, however, Edmonton filed suit against Federal's in state court, seeking unpaid rentals from the date of confirmation to May 6, 1974.[6] On May 15, 1974, Federal's applied to the bankruptcy judge for a determination that the debt due Edmonton had been discharged.

Edmonton appeals from an order of August 14, 1974, dismissing its petition to hold the receiver liable under the lease. Federal's appeals from an order of the same date dismissing its petition to determine that the Edmonton debt was discharged upon confirmation of the arrangement and from another order, dated December 9, 1974, dismissing its petition for modification of the confirmation order for the purpose of rejecting the Edmonton lease under Bankruptcy Rule 924 and rule 60 of the Federal Rules of Civil Procedure. This court retains jurisdiction over the controversy under 11 U.S.C. § 769 and article VII of the debtor's Second Modified Arrangement.

### I.

Under Chapter XI and other chapters of the Bankruptcy Act, executo-

---

1. Bankruptcy Act §§ 301–99; 11 U.S.C. §§ 701–99 (1970).

2. Lease § 14.02.

3. *Id.* § 18.01(i).

4. *Id.* § 18.02. It was revealed in oral argument before this court that the lease was so terminated approximately 11 months after confirmation of the arrangement.

5. Amended schedule, filed Feb. 21, 1973, Docket No. 396.

6. Under section 17.03 of the lease, the landlord's right of recovery was limited to rents accrued up to the date the landlord "shall commence an action [on the lease] in any court of competent jurisdiction."

ry contracts are treated separately from contracts that have been performed. An "executory" contract is one in which, by the terms of the contract and with the support of consideration, something remains to be done before the contract is fully performed. *See Farrington v. Tennessee*, 95 U.S. 679, 683, 24 L.Ed. 558 (1877); *Black's Law Dictionary* 395 (Rev. 4th ed. 1968). Under Chapter XI, executory contracts include unexpired leases of real property. 11 U.S.C. § 706(4). The debtor must file a statement of its executory contracts with its petition. 11 U.S.C. § 724(1). The court may permit the rejection of executory contracts, 11 U.S.C. § 713(1), or, alternatively, the plan of arrangement may provide for their rejection. 11 U.S.C. § 757(2). Any person injured by the rejection of an executory contract is deemed a "creditor," 11 U.S.C. § 753, whose claim may be filed within such time as the court may direct, 11 U.S.C. § 755a(2).

■ Confirmation of the plan makes the arrangement binding on all "creditors," whether or not they have accepted it or filed their claims, and whether or not their claims were scheduled or allowable. 11 U.S.C. § 767(1). It discharges all unsecured debts and liabilities as provided in the plan of arrangement, except debts not dischargeable under section 35 of 11 U.S.C., 11 U.S.C. § 771. Section 35 provides that discharge releases the debtor from all "provable" debts except certain enumerated debts not relevant here.

■■ Chapter XI is designed to enable debtors to continue in their businesses under court supervision. *SEC v. American Trailer Rentals*, 379 U.S. 594, 606–07, 85 S.Ct. 513, 13 L.Ed.2d 510 (1965). The rules governing executory contracts facilitate the statutory design by assuming the continuing vitality of executory contracts in the absence of unambiguous rejection. Rejection of executory contracts under Chapter XI there-fore must be by affirmative action. Contracts which are not affirmatively rejected remain in full effect. *Consolidated Gas Electric Light & Power Co. of Baltimore v. United Railways & Electric Co. of Baltimore*, 85 F.2d 799, 805 (4th Cir. 1936), *cert. denied*, 300 U.S. 663, 57 S.Ct. 493, 81 L.Ed. 871 (1937); 8 *Collier on Bankruptcy* 204. A party to an executory contract with the debtor has no provable claim while the contract is executory; the claim arises only upon rejection. *U. S. Metal Products Co. v. United States*, 302 F.Supp. 1263, 1267–68 (E.D.N.Y.1969). Rejection is a question of law. *In re Greenpoint Metallic Bed Co., Inc.*, 113 F.2d 881, 884 (2d Cir. 1940).

Federal's provided for the rejection of executory contracts in its plan of arrangement and affirmatively rejected an appended list of real property leases. The Edmonton lease, which by then had been assigned, was not listed as a real property lease or as an executory contract. Some months later, the Edmonton lease was scheduled, but as a "contingent" debt rather than as an executory contract—perhaps because Federal Hardware was still paying the monthly rents. Federal's took no further action even after Federal Hardware defaulted. Approximately 2 months elapsed between the time that Federal's had notice of the default and the date of the confirmation. On these facts, the bankruptcy judge held that Federal's never rejected the Edmonton lease.[7]

■ This court concurs that the Edmonton lease was never affirmatively rejected. And there is no such thing as tacit rejection under Chapter XI. *See Greenpoint, supra*, at 884, (employment contract); *U. S. Metal Products, supra* (contract for the sale of goods). It would be especially inappropriate to allow tacit rejection of a long-term lease, because there is a continuing possibility that the debtor might retake possession or find another assignee. Since the

7. Findings of Fact 8, Aug. 9, 1974.

lease was never rejected, Edmonton never became a "creditor" bound by the order of confirmation.

Federal's argues that *Mohonk Realty Corp. v. Wise Shoe Stores, Inc.*, 111 F.2d 287 (2d Cir.), *cert. denied*, 311 U.S. 654, 61 S.Ct. 47, 85 L.Ed. 418 (1940) and *In re Greenpoint Metallic Bed Co., Inc.*, 113 F.2d 881 (2d Cir. 1940), require a different result in this case. These cases establish that a lessor is not helpless if there has been a default on the lease, but the lease has not been rejected. Such a lessor has a right to participate in the arrangement proceedings and may insist that the lease be affirmed or rejected. In some circumstances, the lessor "must appear in the reorganization court at the confirmation hearing or before, in order to assure adequate protection for his interests." *Mohonk, supra,* at 290 (all assets of the corporate debtor transferred to new corporation upon confirmation). The court may then compel rejection of the contract under section 713(1). *In re Greenpoint, supra,* at 884; 8 *Colliers* ¶ 3.15[7] n.26.

*Mohonk* and *Greenpoint* are illustrative of how a bankruptcy court may make good use of its equitable powers to supplement the literal language of the Act. This case, however, is not an appropriate one for the court to invoke its equitable powers.[8] Edmonton did appear to protect its interests at the hearing held on December 5, 1973, shortly before confirmation of the plan of arrangement. Present at this hearing were counsel for Federal's, for the receiver, and for Edmonton. Although the purpose of the hearing was to determine only the receiver's liability during the period of his receivership, the court drew attention to Federal's failure to reject, and Edmonton made it clear that it intended to hold Federal's liable for this failure:

MR. DANIELS [for Edmonton]: . . . The receiver is liable on the October rent under the terms of the lease which he affirmatively—which he didn't do anything to reject or take any steps to give us our day in court. THE COURT: Or the debtor didn't reject.

MR. DANIELS: No one rejected.

\* \* \* \* \* \*

He never took any steps in that and so, therefore, by not taking any affirmative action, he has adopted this lease. We are a continuing liability.[9]

Federal's expressly retained the power to reject additional executory contracts up to the date of confirmation. It could have rejected the Edmonton lease at the December 5th hearing or later. For some reason, or inadvertently, it failed to do so. Whatever the reason, Federal's attention was called to its omission before confirmation of the plan, and even then Federal's failed to reject the lease. The court is not convinced, in these circumstances, that there are any equitable considerations here which warrant relieving Federal's from the consequences that normally flow from such a failure to reject.[10] The bankruptcy

---

8. In *Greenpoint*, it was more advantageous to the claimant to be treated as a general unsecured creditor than as a priority claimant, as the debtor had classified him. The claimant did take steps to protect his interests. He filed a motion before confirmation "to fix his status under his contract with the debtor." The Second Circuit held that the referee should have ordered rejection. Because there was still an excess deposit within the court's control, the court allowed the claimant to prove his claim after confirmation and to collect the same percentage on it that had been received by the unsecured general creditors.

9. Transcript of hearing to determine receiver's liability, vol. 2, at 13 (Dec. 5, 1973).

10. It is conceivable that in some cases a debtor's failure to reject an executory contract, thus leaving the debt undischarged, may prejudice the interests of the creditors who approved the plan of arrangement or jeopardize the financial stability of the newly reorganized debtor. *Cf. In the Matter of Miracle Mart, Inc.*, 396 F.2d 62 (2d Cir. 1968). There is no evidence of such prejudice before this court. Since the issue was not raised, it is not necessary to consider its implications in this case.

court's order determining that the Edmonton debt was not discharged is accordingly affirmed.

## II.

Federal's also appeals the bankruptcy court's refusal to allow modification of the confirmation for the purpose of rejecting the Edmonton lease. Relying on Bankruptcy Rule 924, which makes rule 60 of the Federal Rules of Civil Procedure applicable to bankruptcy proceedings, Federal's argues that its failure to reject the lease was a mistake that enables this court to relieve it from the bankruptcy court's determination that the Edmonton lease was not discharged. Three grounds are set forth for the argument that this is a case falling within Rule 60(b)(1): Federal's scheduled Edmonton as a creditor, providing timely notice of the bankruptcy proceedings; Federal's thought Edmonton would file a claim; and Federal's believed it was in the position of a guarantor on the lease, and that the lease therefore was not a contract capable of rejection.

■ It has been said that Rule 60(b) is a "remedial rule to be liberally construed." 7 *Moore's Federal Practice* ¶ 60.22[2], at 247. A default judgment will be set aside under rule 60 upon a showing that defendant's failure to appear and contest was due to an "erroneous impression of fact," an "unexpected and unavoidable" occurrence making the neglect a matter not of carelessness, but of inevitability. *See Rooks v. American Brass Co.,* 263 F.2d 166 (6th Cir. 1959). But rule 60 generally is not so broad as to excuse such "mistakes" as Federal's claims it made. *Moore's, supra,* at 252–53, citing *United States v. Erdoss,* 440 F.2d 1221 (2d Cir.), *cert.*

*denied,* 404 U.S. 849, 92 S.Ct. 83, 30 L. Ed.2d 88 (1971). In *Erdoss,* the Second Circuit affirmed the district court's refusal to set aside a default judgment because an attorney handling the defendant's case believed that the action had been stayed by pending bankruptcy proceedings. The court noted that "[t]he law in this circuit is reasonably clear when a conscious decision has been made by counsel, ignorance of the law 'is not the sort of "excusable neglect" contemplated by Federal Civil Rule 60(b), 28 U.S.C.A. as a ground for vacating an adverse judgment.'" 440 F.2d at 1223.

■ This case falls within the rule enunciated in *Erdoss.* It is true that Edmonton had notice of the proceedings. Notice, however, does not always excuse legal obligations owed to the notified party. Because, under Chapter XI, Federal's was the party obligated to take the initiative, it is more to the point that *Edmonton* put *Federal's* on notice of Federal's failure to reject. Federal's continuing silence in the face of Edmonton's announcement in open court must be treated as a conscious decision not to reject the lease.

Federal's says, however, that it believed Edmonton would file a claim. If true, this was a considered decision to rely upon Edmonton's initiative. It was not a "mistake," but at most a gamble, which Federal's lost.

Finally, Federal's asserted belief that it was in the position of a guarantor on the lease, and thus unable to reject it, also is not well founded. Federal's is primarily liable on the lease, being the only contracting party with Edmonton on that lease. That primary liability does not cease because it sublets the

Federal's argued that because Edmonton was scheduled as a creditor with a contingent claim, it was bound as a creditor to the order of confirmation. But the Act does not make this the determinative factor. Whether a claimant will be bound by the confirmation is determined by his or her status as a "creditor." Persons who are deemed "creditors" of the debtor are bound without regard to whether they were scheduled by the debtor. 11 U.S.C. § 767(1). Parties to executory contracts with the debtor are not "creditors" until they are injured by rejection. 11 U.S.C. § 753. Federal's scheduling of Edmonton as a creditor does not constitute a rejection, and Federal's does not argue that it does.

premises and assigns the lease to a third person. Federal's continues in such a case to be the primary obligor on the contract. The lease by Edmonton to Federal's was an executory contract under the Bankruptcy Act. 11 U.S.C. 706(4). All leases of real property, whether assigned by subletting or unassigned, are and continue to be executory contracts between the lessor and original lessee. All executory contracts, including leases that have been assigned by subletting the property, if not rejected according to law, are not discharged. The rule that a guaranty or surety contract is not classified as an executory contract is not relevant to a decision in this case.

Accordingly, the bankruptcy judge's order refusing to allow modification of the confirmation for the purpose of rejecting the Edmonton lease is also affirmed.

## III.

Edmonton appeals the bankruptcy judge's refusal to impose liability on the receiver for unpaid rents accrued during his receivership, from October 1, 1973 to December 11, 1973. It frames the issue on appeal as being whether the receiver "stand[s] in the position of the debtor as tenant so as to be liable for rent" during the term of his receivership.

█ Edmonton argues that the receiver became vested with all the rights, title, and obligations of the lease, and that his failure to reject the lease therefore made him liable just as the debtor was liable as lessee. This is not true. The receiver is liable only for his actual use and occupancy or if he adopts the lease as an asset of the estate. *In the Matter of Frederick Meats, Inc.,* 483 F. 2d 951 (9th Cir. 1973); *Meehan v. King,* 54 F.2d 761 (1st cir. 1932); 3A *Collier on Bankruptcy* 1512–13.

The bankruptcy judge found that the receiver did not at any point take possession of or occupy the premises and "never operated a Federal Department Store" on the premises. There was some evidence in the record that property owned by Federal's, Inc., was stored on the premises during the term of the receivership. However, Edmonton never argued that the receiver might be liable for the fair rental value of the space used, never established the period of time during which equipment was stored there or the amount of space it occupied, and does not now argue that the issue is one of fair rental value for storage. Rather, it seeks the full rental value, on the theory that the receiver is liable for his failure to reject even an absolutely empty property. The bankruptcy judge's order dismissing Edmonton's petition is accordingly affirmed.

So ordered.

## JUDGMENT

The debtor's appeal from an order of the bankruptcy court dismissing its petition to determine that Edmonton Investment Company's lease was discharged by confirmation of the debtor's plan of arrangement on December 11, 1973 and from an order of the bankruptcy court dismissing its petition to modify the plan of arrangement for the purpose of rejecting the Edmonton lease; and Edmonton Investment Company's appeal from an order of the bankruptcy court dismissing its petition to hold the receiver liable for rents accrued during the period of his receivership came before this court, the Honorable Charles W. Joiner, United States District Judge, presiding and the issues having been duly heard and a decision having been duly rendered in a Memorandum Opinion and Order dated October 24, 1975,

It is ordered and adjudged that the orders of the bankruptcy court are affirmed in all respects.