**FEDERAL'S, INC., Plaintiff-Appellant,**

v.

**EDMONTON INVESTMENT CO.,
Defendant-Appellee.**

No. 76–1249.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 14, 1977.

Decided April 11, 1977.

Sheldon S. Toll, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for plaintiff-appellant.

Lewis Daniels, Lewis Daniels and James M. Wienner, Detroit, Mich., for defendant-appellee.

Before WEICK and LIVELY, Circuit Judges, and TAYLOR,* District Judge.

ROBERT L. TAYLOR, District Judge.

Federal's, Inc. (Federal's), the debtor in a Chapter XI bankruptcy proceeding, perfected this appeal from a decision of the district court affirming a bankruptcy court decision. *Federal's, Inc. v. Edmonton Investment Company,* 404 F.Supp. 68 (E.D.Mich. 1975). The bankruptcy judge dismissed Federal's petition to determine that its liability to Edmonton Investment Company (Edmonton) under a real property lease had been discharged upon confirmation of an arrangement plan, and denied Federal's petition under Bankruptcy Rule 924 and Rule 60 of the Federal Rules of Civil Procedure to modify the confirmation order to permit Federal's to reject the lease.

The facts were stipulated in the proceeding below. On January 11, 1971, Edmonton, as the lessor, entered into a twenty-year lease agreement with Federal's as the lessee. The lease covered certain real property and called for monthly rental payments of $11,288.98 plus taxes and interest. The lease provided that Federal's had the right to assign its rights under the lease, but an assignment, if made without the prior written consent of Edmonton, failed to relieve Federal's of its continuing liability for the performance of its obligations under the lease.

Federal's assigned the lease to one of its subsidiaries, Federal Hardware and Supply, Inc. (Federal Hardware), on June 24, 1972, without the prior written consent of Edmonton. Approximately three weeks later, Federal's filed a petition under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 *et seq.* (hereinafter "the Act"), and a receiver was appointed. The terms of the lease provided that the filing of a petition for an arrangement was an event of default. Although this default entitled Edmonton to terminate the lease, it chose not to exercise such option at that time.[1]

Beginning on February 21, 1973, all notices to creditors in the arrangement proceedings were sent to Edmonton. In those

---

* The Honorable Robert L. Taylor, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1. In oral argument before the district court, the parties revealed that Edmonton terminated the lease approximately eleven months after confirmation of the plan. 404 F.Supp. at 70 n.4.

proceedings, Federal's scheduled Edmonton as a lessor of an assigned lease to whom it was "contingently" liable for the amount of $10.00. Apparently such listing was the result of Federal's belief that because the assignee was paying the rents promptly, at that time, its liability as an assignor was only "contingent."

On October 1, 1973, the assignee, Federal Hardware, defaulted on the lease and Edmonton promptly sent Federal's a written notice of default. Some two months after Federal Hardware's default, the arrangement plan was confirmed by the bankruptcy judge. The Edmonton lease was not rejected in the confirmed plan, although the plan provided for the rejection of many other leases of real property. Edmonton made no attempt during the arrangement proceedings to file a claim against Federal's based on the lease, but on May 6, 1974 Edmonton filed suit in state court to recover from Federal's all unpaid rents which had accrued since the date of confirmation.[2]

Federal's then petitioned the bankruptcy court for a determination that the unpaid rents allegedly due Edmonton had been discharged by virtue of Edmonton's failure to file a timely claim in the Chapter XI proceedings. The bankruptcy judge dismissed this petition on August 14, 1974, and three months later Federal's petitioned the bankruptcy court to modify the confirmation order so as to permit a rejection of the Edmonton lease. This petition was also denied by the bankruptcy judge and both denials were affirmed by the district court. Federal's challenges on appeal the denial of both of those petitions, and seeks to reverse either ruling and thereby defeat liability for unpaid rents due under the lease.[3]

## I.

■ The district court held that Federal's obligation to Edmonton under the lease was not discharged by confirmation of the plan of arrangement because the lease was an executory contract which Federal's failed to reject. A confirmed arrangement plan generally discharges any debt or liability owed to a scheduled creditor, unless such debt or liability is provided for in the plan. 11 U.S.C. § 771. Executory contracts and the debtor's obligation thereunder, however, are not discharged by a Chapter XI arrangement plan and remain in effect unless the debtor affirmatively rejects them during the Chapter XI proceedings. *See, e.g., Smith v. Hill,* 317 F.2d 539 (9th Cir.1963). As observed by the district court, this rule is consistent with the purpose of Chapter XI of enabling debtors to continue their business under court supervision. 404 F.Supp. at 71, *citing SEC v. American Trailer Rentals,* 379 U.S. 594, 606–07, 85 S.Ct. 513, 13 L.Ed.2d 510 (1965).

Rejection may be permitted by the bankruptcy court upon notice to the appropriate parties, or it may be provided for in the plan submitted for confirmation. 11 U.S.C. §§ 713(1) and 757(2). Thus, the debtor must take affirmative action to reject an executory contract.

"The failure to assume affirmatively an executory contract does not result at any time in the rejection of the contract. Whether the debtor is in possession, or whether there is a receiver or trustee, the contract can be rejected *only* by affirmative action under § 313(1) and Chapter XI Rule 11–53 or § 357(2). Unless so rejected, the contract continues in effect." (footnote omitted) (emphasis added)

8 *Collier on Bankruptcy* ¶ 3.15[6] (14th ed. 1976).

The district court approved the bankruptcy judge's finding that Federal's failed to affirmatively reject the Edmonton lease, and Federal's has not challenged this determination on appeal.

---

**2.** On November 9, 1973, Edmonton petitioned the bankruptcy court, seeking to hold the receiver liable for rent due since the date of Federal Hardware's default. That petition was denied by the bankruptcy judge and affirmed by the district court, and Edmonton has not appealed that decision. Only rents falling due after the date of the confirmation order are at issue here.

**3.** If the petition to modify is granted, Edmonton could seek damages for a rejected executory contract under 11 U.S.C. § 753.

Federal's contends, however, that the district court erred by holding that the lease was an executory contract because the assignment converted the lease from an executory contract to a suretyship agreement, which is not an executory contract.

It is clear that an unexpired lease of real property is considered an executory contract under Chapter XI. The relevant section of Chapter XI provides in pertinent part:

"*[Meaning of terms used].*—For the purposes of this chapter, unless inconsistent with the context—

\* \* \* \* \* \*

"(4) 'executory contracts' shall include unexpired leases of real property . .." 11 U.S.C. § 706(4).

Relying on this provision, the district court concluded that the rule advanced by Federal's that a suretyship or guaranty agreement is not an executory contract was not relevant to the outcome of this case, and observed that:

"Federal's is primarily liable on the lease, being the only contracting party with Edmonton on that lease. That primary liability does not cease because it sublets the premises and assigns the lease to a third person. Federal's continues in such a case to be the primary obligor on the contract. The lease by Edmonton to Federal's was an executory contract under the Bankruptcy Act. 11 U.S.C. 706(4). All leases of real property, whether assigned by subletting or unassigned, are and continue to be executory contracts between the lessor and original lessee." 404 F.Supp. 73–4.

Indeed, by the express terms of the lease, Federal's remained primarily liable by virtue of its making an unapproved assignment.

Federal's relies on three cases decided by the Second Circuit Court of Appeals, *In re Radio-Keith-Orpheum Corp.,* 91 F.2d 1004 (2d Cir.), *cert. denied, Irving Trust Co. v. Burnett,* 302 U.S. 754, 58 S.Ct. 282, 82 L.Ed. 583 (1937), *In re Paramount Publix Corp.,* 85 F.2d 83 (2d Cir.1936), and *T.A.D. Jones Co. v. Winchester Repeating Arms Co.,* 55 F.2d 944 (D.Conn.), *aff'd,* 61 F.2d 774 (2d Cir.1932), *cert. denied, Southeastern Investment Co. of Savannah, Ga. v. Tobler,* 288 U.S. 609, 53 S.Ct. 401, 77 L.Ed. 983 (1933), in support of the position that, upon assignment of the lease, Federal's became a surety for the performance of its assignee and was no longer a party to an executory contract. We are of the opinion that the holdings of these cases are inapposite to the facts of the present case, and do not require a result different from that reached by the district court.

*In re Radio-Keith-Orpheum Corp., supra,* involved an arrangement under former Section 77B of the Act. The Court considered the relation of a sublessor to its sublessee, and did not consider a lessee-assignor's obligation similar to Federal's herein. A sublessor's obligation to its original lessor is significantly different from that of a lessee-assignor to its original lessor.

The Court in *In re Paramount Publix Corp., supra,* also an arrangement proceeding under former Section 77B of the Act, applied Ohio law to determine whether certain acts on the part of the lessor constituted a termination of the lease. Ohio law was also interpreted by the Court as placing the assignor in the status of a surety for its assignee's liability to the original lessor. Ohio law is not controlling in our case, and Federal's has failed to cite any Michigan authorities for its position. Moreover, there is no indication in that case that the lease contained a clause expressly providing for continuing liability on the part of the lessor in the event of an unconsented assignment.

The third case referred to by Federal's, *T.A.D. Jones Co. v. Winchester Repeating Arms Co., supra,* involved a receivership in equity. The Court dealt specifically with a lessee's relationship to the original lessor after an assignment of the lease by the lessee. The Court noted that the privity of estate between the lessee-assignor and the lessor was broken by the assignment because the assignee came into privity of estate with the lessor. The assignee also expressly assumed all the covenants of the

lease. The Court stated that, although such action on the part of the assignee created privity of contract between the assignee and the lessor, the privity of contract between the lessee-assignor and the lessor "remained intact notwithstanding the assignment." *Id.,* at 947. The Court, although referring to the lessee-assignor's liability as "that of a surety for the rent," emphasized that, in regard to lessor's claim, "the liability [both of the lessee-assignor and the assignee] was primary and direct" and "more than the secondary liability of a guarantor." *Id.,* at 947.

We conclude that, for the purposes of Chapter XI proceedings, unexpired leases of real property, even after assignment, remain executory contracts for the original parties thereto, and must be affirmatively rejected by the debtor before they are discharged in Chapter XI proceedings. Accordingly, Federal's failure to affirmatively reject this lease in the arrangement proceedings prevented discharge of its liabilities under the lease.

## II.

■ Federal's next contends that Edmonton had a provable claim, even though the lease had not been affirmatively rejected, because the assignee of the lease was in default and payments were due and owing for a period of at least two months before the confirmation of the plan. The district court held that Edmonton had no provable claim which was discharged under 11 U.S.C. § 771 because "[a] party to an executory contract with the debtor has no provable claim while the contract is executory; the claim arises only upon rejection." 404 F.Supp. at 71, *citing U. S. Metal Products Co. v. United States,* 302 F.Supp. 1263, 1267–68 (E.D.N.Y.1969).

Federal's relies on *In re Crawford Clothes, Inc.,* 434 F.2d 399 (2d Cir.1970), in support of its position. That case involved

a debtor in an ordinary bankruptcy proceeding, not a proceeding under Chapter XI. Furthermore, the debtor in that case had entered into a termination agreement with the lessor prior to any disaffirmance order. In the present case, there was no termination of the lease, by agreement or otherwise, during the period of time in question.

Federal's also relies on certain sections of *Collier on Bankruptcy* to support this theory. We find that those sections of *Collier,* when read in context, simply maintain that Section 353 of the Act (which denominates provable claims under leases and limits damages under such claims) applies to a landlord's claim for injury resulting from a *rejected* unexpired lease of real estate, and may also apply to a landlord's claim for damages or indemnity under a covenant contained in a real estate lease where such lease is *terminated,* either automatically upon the filing of a petition with the bankruptcy court, or where there is "an actual breach by the debtor and a termination of the lease by the landlord prior to the commencement of the case." *See 9 Collier on Bankruptcy* ¶ 7.15[6.1] (14th ed. 1976).

This interpretation of Section 353 does not support Federal's theory that the assignee's default *alone* gave Edmonton a provable claim. The language in *Collier* refers to two specific events that may give rise to a provable claim under the lease, even though the lease was not rejected. These events are an automatic termination of the lease or an actual breach and subsequent termination by the landlord, occurring either contemporaneously with or prior to the commencement of the proceedings.[4] Neither of those events occurred in the present case. Thus, the default of the assignee alone did not give Edmonton a provable claim against Federal's, and such default failed to alter the character of the executory contract between Edmonton and Federal's.

---

**4.** Collier's interpretation, although relying on statutory construction, could be viewed as an attempt to further define the term "unexpired leases of real property." Under this proposition, if a lease is terminated, either prior to the

initiation of proceedings or contemporaneously with the filing of the petition, the lease is no longer "unexpired" for purposes of Chapter XI proceedings.

## III.

◼ Federal's also contends that Edmonton had a duty to insist during the arrangement proceedings that its lease either be rejected or be fully assumed, and thus, as an equitable consideration, Federal's failure to reject the lease should not bar the discharge of its liability under said lease.

*Mohonk Realty Corp. v. Wise Shoe Stores, Inc.,* 111 F.2d 287 (2d Cir.), *cert. denied,* 311 U.S. 654, 61 S.Ct. 47, 85 L.Ed. 418 (1940), cited by Federal's, does not support such a contention. *Mohonk* was a proceeding under former Section 77B of the Act wherein the lessor moved to reopen the terminated proceedings, seeking to modify the confirmed plan which placed it in an unfavorable position. In reviewing the district court's denial of the motion for an abuse of discretion, the Court held that the lessor had the "right to be heard" and was "entitled to insist that his lease be either rejected or fully assumed under the plan," but that "in order to assure adequate protection of his interests" he must appear in the reorganization court and assert that right.[5] *Id.,* 290. In the present case, Edmonton had a right to appear in court and insist that Federal's either reject or adopt the lease, but the mere failure of Edmonton to exercise this right to its own protection fails to raise an equitable consideration excusing Federal's failure to reject the lease.

Federal's also asserts that *In re Greenpoint Metallic Bed Co.,* 113 F.2d 881 (2d Cir.1940), supports its contention that equitable considerations should excuse its fail-

ure to reject the lease. *Greenpoint* was a Chapter XI proceeding involving an unrejected executory employment contract, not an unexpired lease of real property. The Court, citing *Mohonk,* noted that a party to an executory contract with a debtor in Chapter XI proceedings is in an "equivocal position:"

"Until his contract is rejected he is not a creditor with a provable claim; but he is not helpless, for he *may insist* that his contract be either rejected or assumed under the plan and *may apply* to the bankruptcy court to protect his interest at the confirmation hearing or before." (emphasis added). 113 F.2d 881, at 884.

The Court found that the employee had filed a timely motion exercising his right to insist on rejection or assumption of his contract under the plan, but the employee's failure to appeal the subsequent confirmation order barred him from contending that his motion was improperly denied. In the present case, Edmonton never attempted to exercise its right to require the lease to be either affirmed or rejected under the plan.[6] Such an unexercised right fails to rise to the status of an unperformed duty, and thus gives little, if any, weight to Federal's argument that equitable considerations should remove the affirmative rejection requirement.[7]

## IV.

Finally, Federal's maintains that, under Bankruptcy Rule 924, which makes Rule 60

---

5. In *Mohonk,* the failure of the lessor to appear in the proceedings and insist on rejection or assumption of his lease were sufficient grounds upon which to base the denial of his motion to reopen the plan and alter his unfavorable position thereunder. Under that plan a new corporation was organized and the lease was "assigned" to the new corporation. Under the applicable law, this meant that the assignee corporation assumed only privity of estate with the lessor, was liable for rents only as long as it remained in possession, and was free to leave at any time without penalty.

6. The district court noted that Edmonton did appear in the proceedings at a hearing to determine the receiver's liability under the lease, and the discussion at that hearing revealed Edmon-

ton's intent to enforce the lease if Federal's failed to reject it. 404 F.Supp. 68, at 72.

7. Had there been a complete assignment of the debtor's assets to a new corporation, as was the case in *Mohonk* and *Greenpoint,* thus leaving the claim against the original corporate debtor worthless, there might be more substance to an equitable argument that the lease should have been affirmed or rejected in the plan. But, even in the *Greenpoint* case, the employee had moved the referee to fix the status of his contract under the plan. Here no such motion was made by Edmonton. *See* 8 *Collier on Bankruptcy* ¶ 3.15[7] n.26 (14th ed. 1976).

of the Federal Rules of Civil Procedure applicable to bankruptcy proceedings, the bankruptcy judge should have modified the confirmation order to permit Federal's to affirmatively reject the lease. In particular, Federal's sought to invoke the provision of Rule 60(b), the pertinent part of which reads as follows:

> "(b) *Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . ."

Motions made under subsection (b)(1) must be filed within a reasonable time, not to exceed one year from the date of the order from which relief is sought. The confirmation order was entered on December 11, 1973 and Federal's petition to modify was filed on November 27, 1974. Assuming Federal's met the reasonable time requirement for filing its petition, we turn to Federal's argument that its failure to reject the lease was a mistake, clearly within the scope of Rule 60(b)(1), and thus the bankruptcy court abused its discretion by denying the motion.

Federal's asserts that its failure to reject the lease was based on its mistaken belief that: (a) Edmonton was scheduled as a creditor and had timely notice of the Chapter XI proceedings; (b) Edmonton would file a claim; and (c) by virtue of the assignment, Federal's was a surety, and the contract was no longer executory.

Rule 60 was not intended to relieve counsel of the consequences of decisions deliberately made, although subsequent events reveal that such decisions were unwise. *United States v. Erdoss,* 440 F.2d 1221 (2d Cir.), *cert. denied,* 404 U.S. 849, 92 S.Ct. 83, 30 L.Ed.2d 88 (1971). Federal's chose to rely on a legal theory during the arrangement proceedings, which, if upheld, would have relieved it of any liability under the lease due to Edmonton's failure to file a claim. Federal's decision was not one conceived in ignorance. Such a deliberate choice is not the type of mistake contemplated by Rule 60. In conclusion, we find that the bankruptcy court properly exercised its discretion in denying the motion to modify the confirmation order.

The decision of the district court is affirmed.