NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0571n.06
Filed: August 9, 2007

No. 06-3190

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MARK D. BROACH, et al.,

    Plaintiffs-Appellants,

v.

                                         ON APPEAL FROM THE UNITED
                                         STATES DISTRICT COURT FOR THE
CITY OF CINCINNATI, et al.,                  SOUTHERN DISTRICT OF OHIO

    Defendants-Appellees.

                                          /

BEFORE:    MARTIN, BATCHELDER, and CLAY, Circuit Judges.

    **CLAY, Circuit Judge.**  This case arose when Plaintiffs, Mark D. Broach et al., filed a §

1983 suit against Defendants, the City of Cincinnati et al., alleging violations of their First and

Fourteenth Amendment rights under the U.S. Constitution, as well as various pendent Ohio state law

claims.  Today, however, we face only one discrete procedural issue.  On appeal, Plaintiffs challenge

the district court's order denying their Rule 60(b) motion for relief from the district court's previous

entry of summary judgment in Defendants' favor.  For the reasons that follow, we **AFFIRM**.

**BACKGROUND**

    **A.**    **Substantive Facts**

Plaintiffs are black firefighters who work (or worked) full-time in Defendant City of Cincinnati's fire division. In August 1999, Defendant Kappa, the EMS Coordinator for Defendant City of Cincinnati, learned that the State of Ohio could not locate Emergency Medical Technician ("EMT") certification records for over 200 firefighters from the Cincinnati Fire Department ("CFD"). Apparently, the loss of these certification records – and others – resulted from a discrepancy in the State of Ohio's record-keeping. Through an agreement with the State, those affected firefighters were permitted to complete renewal applications to gain re-certification as EMTs without "challenging" the State's reinstatement exam. The State mailed renewal applications directly to the firefighters' homes for completion, and the affected firefighters were given a finite period of time to complete and return the renewal applications.

Approximately 50 Cincinnati firefighters failed to submit their renewal applications to the State within the allotted time. This group consisted of both black and white firefighters. On the record before us, it appears that CFD instructed these 50 firefighters to contact the State in order to challenge the reinstatement exam. Most of this group followed through, challenging the reinstatement exam and regaining their EMT certification. Some of the firefighters either declined to challenge the reinstatement exam, or challenged the exam and failed. According to the Cincinnati Fire Department's Policies on Work Schedule and Duties, "[a] minimum mandatory requirement of employment for all uniformed members of the Fire Division is an [Emergency Medical Technician ("EMT")]-Basic certification." (J.A. at 62) Additionally, the Policies state that "[e]xpired EMT Certifications due to a member's negligence will cause the member to lose their EMT Certification pay and administrative disciplinary action that could lead to dismissal will be initiated against the

2

member." (*Id*.) Ultimately, those firefighters who did not regain EMT certification lost their EMT certification pay, which amounts to one percent of their salary, were subject to disciplinary action, including written reprimands, and were warned that they could be dismissed.[1]

## B.    Procedural Facts

On October 22, 2002, Plaintiffs brought a § 1983 suit in federal district court against Defendants alleging violations of their First and Fourteenth Amendment rights, as well as state law claims of conspiracy, invasion of privacy, interference with contractual relations, and intentional infliction of emotional distress.  Therein, Plaintiffs alleged that

> Plaintiffs attempted to contact the State Board of EMS to secure their certificates, but were ordered by officials in the Fire Division to discontinue that effort.  Plaintiffs were told that if they continued to attempt to resolve their certification problems through the State Board of Emergency Medical Service they would be subject to disciplinary action to include termination.  EMS Coordinator Michael Kappa and Chief Kroeger specifically forbade Plaintiffs from contacting the State Board of EMS, under the pain of possible termination.

(J.A. at 21-22)  Plaintiffs additionally averred that a policy existed to prevent them "from pursuing their EMT license (recertification), already earned by refresher course and examination," and that Defendant Wright instituted the policy.[2]  (*Id*. at 23)

---

[1]Incidentally, as of January 28, 2003, nearly all Plaintiffs had regained their certification. Only Plaintiffs Thompson and Wilson had not yet regained certification at that time.  Plaintiff Thompson has apparently now been re-certified, while Defendants dismissed Plaintiff Wilson for failure to regain his EMT certification.

[2]Defendants deposed several of Plaintiffs, and the record before this Court contains incredibly brief parts of those deposition transcripts.  On the whole, the record reflects that Plaintiffs could not articulate the factual basis for their claims against Defendants and, specifically, could not identify how Defendants had treated black and white firefighters differently with respect to EMT certification.

On May 9, 2003, Defendants filed a motion to dismiss, which the district court subsequently denied. A scheduling order entered December 8, 2004 by the district court initially set a deadline of February 28, 2005 for Defendant to file a motion for summary judgment. On January 25, 2005, Defendants brought a motion to compel discovery. An affidavit attached to Defendants' motion to compel reflects that depositions of Plaintiffs McConnell and Price were initially noticed and scheduled for November 10, 2004, but Plaintiffs' counsel notified Defendants a few days before the scheduled depositions that Plaintiffs would be unavailable. Plaintiffs' counsel apparently promised to provide potential deposition dates, but did not. Defendants, in a letter dated December 8, 2004, requested possible deposition dates for those Plaintiffs, but Plaintiffs' counsel did not respond. Hearing nothing from Plaintiffs' counsel, Defendants again scheduled and noticed the depositions for January 24, 2005, but neither Plaintiffs nor their counsel appeared. Plaintiffs did not oppose Defendants' motion to compel.

The district court granted Defendants' motion to compel on February 15, 2005. The district court's order gave Defendants 30 days to reschedule and conduct those depositions, and noted "[f]ailure to comply shall result in the depositions being conducted at the Courthouse under the supervision of the Court." (J.A. at 100-101) Critically, on February 24, 2005, nine days later, the district court extended the deadline for Defendants to file a motion for summary judgment to April 29, 2005, because Defendants would otherwise "not have sufficient time to take the depositions and prepare [their] Motion for Summary Judgment prior to the previously established . . . deadline." (*Id*. at 102) In so doing, the district court referred to its recent order granting Defendants' motion to compel.

Defendants filed their motion for summary judgment on April 29, 2005. Plaintiffs wholly failed to respond to Defendants' timely motion, whether by filing a motion in opposition, a Rule 56(f) affidavit, or motion to continue for purposes of discovery. Nearly two months later, on June 28, 2005, the district court granted Defendants' motion for summary judgment. Subsequently, Plaintiffs filed a Rule 60(b) motion for relief from judgment on August 26, 2005. The district court denied Plaintiffs' motion on November 23, 2005. Plaintiffs timely appealed.

**DISCUSSION**

**I.      WHETHER THIS COURT LACKS JURISDICTION TO CONSIDER PLAINTIFFS' CHALLENGE TO THE SUMMARY JUDGMENT ORDER**

In their brief on appeal, Plaintiffs argue that the district court abused its decision in modifying the scheduling order and in ultimately granting Defendants' summary judgment motion "sua sponte." However, we lack jurisdiction to consider these claims.

Plaintiffs did not appeal the district court's June 28, 2005 order granting Defendants' motion for summary judgment. Rather, nearly two months later, on August 26, 2005, Plaintiffs filed a Rule 60(b) motion for relief from judgment. On November 23, 2005, the district court denied this motion. On December 22, 2005, Plaintiffs filed a notice of appeal only from the district court's November 23, 2005 order denying their Rule 60(b) motion for relief from judgment. Because appeal from a Rule 60(b) denial does not expose the underlying judgment to review, *see Hood v. Hood*, 59 F.3d 40, 42 (6th Cir. 1995), Plaintiffs' December 22, 2005 notice of appeal fails to properly place before us challenges to the district court's grant of summary judgment.

A motion for relief under Rule 60(b), when filed no later than 10 days after the district court enters the underlying judgment, tolls the 30 day deadline for filing a notice of appeal until the court

rules on the Rule 60(b) motion. Fed. R. App. P. 4(a)(4)(A)(vi). Had Plaintiffs filed their Rule 60(b) motion no later than July 8, 2005, the time for filing a notice of appeal from the order granting summary judgment would arguably have been tolled, and the district court's November 23, 2005 order would have triggered anew the period for filing a notice of appeal. *Cf. Inge v. Rock Fin. Corp.*, 281 F.3d 613, 617-18 (6th Cir. 2002). The simple fact, of course, is that Plaintiffs waited nearly two months to file their Rule 60(b) motion. Accordingly, we need not consider whether, in their December 22, 2005 notice of appeal, Plaintiffs sought review of the district court's June 28, 2005 order granting summary judgment. To even entertain the possibility would be to open a back door to appellate review for parties who failed to timely secure it pursuant to the Federal Rules of Appellate Procedure. This we cannot do.[3] We thus proceed to consider the only issue properly before us.

## II.     WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING PLAINTIFFS' RULE 60(b) MOTION

### A.     Standard of Review

We review for abuse of discretion a district court's denial of a Rule 60(b) motion for relief from judgment. *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 385 (6th Cir. 2001). Abuse of discretion occurs where the district court relied on clearly erroneous findings of fact, or when it improperly applied the law or used an erroneous legal standard. *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995). We typically find abuse of discretion "only where there is a 'definite and firm

---

[3]In any event, we note that these challenges lack merit inasmuch as Plaintiffs failed to diligently conduct themselves throughout the course of litigation in the district court below.

conviction that the trial court committed a clear error of judgment.'" *Jinks*, 250 F.3d at 385 (quoting

*Davis v. Jellico Cmty. Hosp., Inc.*, 912 F.2d 129, 133 (6th Cir. 1990)).

<u>      </u>**B.**      **District Court's Denial of Plaintiffs' Rule 60(b) Motion**

Plaintiffs contend that the district court abused its discretion in denying their Rule 60(b)

motion. Under Rule 60(b)(1), Plaintiffs allege mistake, inadvertence, surprise, and excusable neglect

warrant relief. Specifically, Plaintiffs (1) attribute legal error to the district court's decision to

modify the scheduling order purportedly absent good cause,[4] and to rule on Defendants' summary

judgment motion,[5] which Plaintiffs characterize as "out of time;" (2) contend that the initial

scheduling order led Plaintiffs to believe that they would be permitted to continue discovery long

after the deadline for summary judgment motions passed, apparently without need to file a motion

---

[4] Any challenge to the district court's decision to modify its scheduling order is not properly before us. Nevertheless, we note that district courts have discretion to modify initial scheduling orders upon a showing of good cause, *see* Fed. R. Civ. P. 16(b), a standard typically measured by "the moving party's diligence in attempting to meet the case management order's requirements." *Inge*, 281 F.3d at 625. Defendants' motion to compel demonstrated to the district court that good cause existed to reset the summary judgment deadline since, notwithstanding Defendants' diligence, they could not depose Plaintiffs before the initial deadline for summary judgment motions had passed. Had Plaintiffs been concerned with the propriety of the modified scheduling order, or in the event of any confusion as to the district court's intent, Plaintiffs could have contacted the district court to clarify the court's expectations or to formally oppose the modification. They did not.

[5] Plaintiffs' implicit claims that the district court abused its discretion in granting summary judgment *when it did* are also not properly before us. Yet, even if they were, Plaintiffs could not show an abuse of discretion. "[D]istrict courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Plaintiffs had notice under Federal Rule of Civil Procedure 56, Southern District of Ohio Civil Rule 7.2(a)(2), the district court's order extending the time to file summary judgment motions, and Defendants' motion for summary judgment which, incidentally, was timely filed under the modified schedule. Any attempts to attribute lack of notice to confusion must necessarily fail inasmuch as Plaintiffs apparently made no attempt to clarify the court's expectations.

in opposition or, indeed, motions of any kind; and (3) attribute confusion to the different deadlines provided therein for summary judgment motions and dispositive motions.[6] In sum, Plaintiffs say, their counsel "was completely without notice that the court would rule" on Defendants' summary judgment motion. (Pl.'s Br. at 6) Plaintiffs raised many of these same arguments before the district court below. On appeal, Plaintiffs additionally invoke Rule 60(b)(6).

The district court denied Plaintiffs' Rule 60(b) motion, finding that their "rationale for delay rests on an unreasonable reading of the [scheduling] order, as well as inexcusable ignorance of th[e] Court's local rules." (J.A. at 136-37) Additionally, the district court concluded that "Plaintiffs failed to establish mistake, inadvertence, or surprise" inasmuch as "[t]he mistake of relying on a shaky interpretation of the Order and the 'surprise' of th[e] Court's Opinion granting Defendant's [sic] Motion for Summary Judgment are not bases for a remedy based on mistake, inadvertence, or surprise." (*Id*. at 138-39) Plaintiffs did not rely on Rule 60(b)(6) in the court below and, thus, the district court's opinion makes no mention of that provision. We agree with the district court that Plaintiffs' arguments lack merit, and find that the district court did not abuse its discretion.

Federal Rule of Civil Procedure 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment.

Parties cannot employ Rule 60(b) "as a substitute for an appeal, . . . or as a technique to avoid the consequences of decisions deliberately made yet later revealed to be unwise." *Hopper v. Euclid*

---

[6]Paradoxically, Plaintiffs later "contend that the Scheduling Order is crystal clear." (Pl.'s Br. at 8)

*Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989) (internal citations omitted). Rather, Rule 60 is designed to provide relief only where "the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or . . . when the judge has made a substantive mistake of law or fact in the final judgment or order." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000). Plaintiffs' invocation of Rule 60(b) more closely resembles "a substitute for an appeal," as Plaintiffs point to no "excusable" mistakes and no legal or factual error in the district court's final order.

*Kendall v. The Hoover Co.*, 751 F.2d 171, 173 (6th Cir. 1984), proves instructive in the case at hand. There, the plaintiff challenged the district court's denial of a Rule 60(b) motion, brought on the basis that the district court improperly granted summary judgment "without a hearing or notice that this matter was under consideration by the court." *Id*. At the basis of his Rule 60(b) motion, plaintiff argued that opposing counsel and the court should have made "reasonable assumptions" about "plaintiff's need for additional time" for discovery and responsive motions. *Id*. at 175. The *Kendall* court adopted the reasoning of the district court in that case, stating "[t]he failure to respond to a motion for summary judgment or to request an extension of time to file a response thereto is *inexcusable* neglect." *Id*. (emphasis added).

In the instant case, Plaintiffs never did respond to Defendants' motion for summary judgment, much less within the 21 day limit for memoranda in opposition established by local rule. *See* S.D. Ohio Civ. R. 7.2(a)(2). Like the plaintiff in *Kendall*, Plaintiffs additionally declined to file any type of motion to continue or a Rule 56(f) affidavit to demonstrate the need for additional discovery. Instead, Plaintiffs apparently chose to ignore the district court's order extending the time

for Defendants to file a summary judgment motion, and made their deliberate ignorance the basis of a claim that they had no notice that the district court was entertaining Defendants' summary judgment motion. Thus, Plaintiffs cannot rely on claims of "mistake, inadvertence, surprise, or excusable neglect." *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) ("[I]gnorance of the rules . . . do[es] not usually constitute 'excusable' neglect."); *McCurry v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 593 (6th Cir. 2002) ("[N]either strategic miscalculation nor counsel's misinterpretation of the law warrants relief from a judgment."); *Rice v. Consol. Rail Corp.*, No. 94-3963, 1995 WL 570911, at *4 (6th Cir. Sept. 27, 1995) (unpublished) ("[E]ven though plaintiffs believed that defendant's motion would not be ruled upon until after the conclusion of discovery, this in no way negated their obligation to respond to the motion."); *B & D Partners v. Pastis*, No. 05-5954, 2006 WL 1307480, at *3 (6th Cir. May 9, 2006) (unpublished) ("[W]hen inadvertent conduct leads to a judgment, a claim of mistake or excusable neglect will always fail if the facts demonstrate a lack of diligence.").

Under the district court's order modifying the schedule, of which Plaintiffs clearly had notice, Defendants timely filed their motion for summary judgment. The record reflects that Defendants served Plaintiffs with a copy of their motion for summary judgment. Being served with the motion, Plaintiffs "were put on notice that some action was expected of them." *See Rice*, 1995 WL 570911, at *5. That the district court would rule on a timely motion nearly two months after filing should come as no surprise. Nor should the district court's expectation that Plaintiffs would comply with local rules for filing responsive documents. *See id.* at *4 ("An attorney is charged with knowing and understanding the rules of the courts in which he practices."). "Rule 60 was not intended to relieve

counsel of the consequences of decisions deliberately made, although subsequent events reveal that such decisions were unwise." *Federal's Inc. v. Edmonton Inv. Co.*, 555 F.2d 577, 583 (6th Cir. 1977).

Lastly, Plaintiffs waived any argument pursuant to Rule 60(b)(6), which permits the district court to grant relief from judgment for "any other reason justifying relief," by failing to raise it below. Even if Plaintiffs did not waive their Rule 60(b)(6) argument, it too fails on the merits. "Rule 60(b)(6) should apply 'only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule,'" *Olle v. The Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990), and "where principles of equity *mandate* relief." *Blue Diamond Coal Co. v. Tr. of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (emphasis added). Plaintiffs simply cannot show any "exceptional or extraordinary circumstances" warranting relief under Rule 60(b)(6), nor does equity require it. *See McCurry*, 298 F.3d at 596 (finding "straightforward claims of attorney error and strategic miscalculation[] do not satisfy this rigorous standard"). Consequently, we hold the district court did not abuse its discretion in denying Plaintiffs' motion for relief from judgment.

## CONCLUSION

For the foregoing reasons, we **AFFIRM**.